Loran W. ROBBINS, et al., Plaintiffs,

v.

**LADY BALTIMORE FOODS, INC., Defendant.**

No. 85 C 9262.

United States District Court, N.D. Illinois, E.D.

Oct. 14, 1987.

S.W.2d 924 (Tenn.App.1984).

Terence G. Craig, Francis J. Carey, Thomas J. Angell, Central States Law Dept., Chicago, Ill., for plaintiffs.

James G. Baker, David L. Wing, Spencer, Fane, Britt & Browne, Kansas City, Mo., James C. Murray, Jr., Katten, Muchin, Zavis, Pearl & Galler, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

DECKER, District Judge.

Plaintiffs, trustees of the Central States, Southeast and Southwest Areas Pension Fund ("the Fund"), commenced this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* As amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), ERISA provides in part that upon withdrawal from a multiemployer pension plan, an employer shall owe the plan a certain "withdrawal liability." 29 U.S.C. §§ 1381–1405. The Fund brought the instant suit against defendant employer Lady Baltimore Foods, Inc. ("Lady Baltimore") to compel interim withdrawal liability payments, pursuant to 29 U.S.C. §§ 1399(c)(2) and 1401(d), pending final determination of Lady Baltimore's total withdrawal liability. Jurisdiction is founded upon 29 U.S.C. §§ 1132(e), 1132(f), and 1451(c). The Fund now moves for summary judgment. Lady Baltimore makes a cross motion for summary judgment on the grounds that it is expressly exempted from withdrawal liability by statute.

### I. *Statutory Framework*

Before exploring the facts of the instant case, we must survey but one small chamber of ERISA's architecture. As noted, when an employer leaves a multiemployer plan, the employer owes the plan a withdrawal liability. 29 U.S.C. § 1381. This withdrawal liability serves to cover the employees' share of the vested, but unfunded, benefits. *Robbins v. B and B Lines, Inc.,* 830 F.2d 648, 649 (7th Cir.1987). Although the pension plan makes the initial assessment of withdrawal liability, 29 U.S.C. § 1382,

> Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration.

29 U.S.C. § 1401(a). The arbitrator's award is subject to judicial review. 29 U.S.C. § 1401(b)(2).

Despite such ample opportunity to contest assessed withdrawal liability, Congress clearly envisioned a " 'pay now, dispute later' collection procedure." *Robbins v. Pepsi–Cola Metropolitan Bottling Co.,* 800 F.2d 641, 642 (7th Cir.1986) (per curiam). 29 U.S.C. § 1399(c)(2) provides:

Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor under subsection (b)(1) of this section beginning no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule.

29 U.S.C. § 1401(d) also elaborates the mandatory nature of "interim" payments:

Payments shall be made by an employer in accordance with the determinations made under this part until the arbitrator issues a final decision with respect to the determination submitted for arbitration, with any necessary adjustments in subsequent payments for overpayments or underpayments arising out of the decision of the arbitrator with respect to the determination. If the employer fails to make timely payment in accordance with such final decision, the employer shall be treated as being delinquent in the making of a contribution required under the plan (within the meaning of section 1145 of this title).

The withdrawal liability provisions of the MPPAA have been upheld as constitutional. *Connolly v. Pension Benefit Guaranty Corp.,* 475 U.S. 211, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986); *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984); *Peick v. Pension Benefit Guaranty Corp.,* 724 F.2d 1247 (7th Cir.1983), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3554, 82 L.Ed.2d 855 (1984).

## II. *Factual Background and Procedural Posture*

Lady Baltimore, a Kansas corporation, entered into a collective bargaining agreement that became effective on January 12, 1979, and which remained in effect through May 15, 1982. Under Article XVIII, Section 7,

Effective January 12, 1982 all contributions to the Central States, Southeast and Southwest Areas Pension Fund shall cease, Sections 1, 2, 3, 4, 5 and 6 of this Article shall be null and void and of no further force and effect and all obligations of the Company to said Fund or under any trust agreement shall be terminated.

Agreement, Lady Baltimore's Suggestions in Support of its Motion for Summary Judgment and in Opposition to the Fund's Motion for Summary Judgment, Exhibit 1.[1]

On or about December 27, 1983, the Fund sent Lady Baltimore a notice and demand for payment of withdrawal liability in the amount of $216,488.80. This document notified Lady Baltimore that it was required to discharge its liabilities in monthly payments of $4,967.25, the first such payment to be made on February 1, 1984. Subsequently, the Pension Fund voluntarily reduced the assessment of Lady Baltimore to $212,797.92, and changed the monthly rate of demanded payment to $5,001.06. The Fund and Lady Baltimore are presently engaged in § 1401(a) mandatory arbitration over the assessed withdrawal liability.

On November 1, 1985, the Fund filed the instant suit to force Lady Baltimore to make interim payments of its assessed withdrawal liability pending the outcome of arbitration. On August 26, 1986, the Court ordered Lady Baltimore to begin making its assessed monthly payments as they became due. Therefore, the Fund's motion

---

1. The Fund maintains that Lady Baltimore did not actually withdraw until January 16 because January 12, 1982 fell on a Tuesday, and Article XVIII, Section 2 of the Agreement provided in part that the company was to make contributions for the entire week (i.e., through Saturday) in which a given employee worked. Thus, contends the Fund, a genuine issue of material fact exists as to precisely when Lady Baltimore withdrew. However, under Section 7 of the same Article, the provisions of Section 2 were null and void effective January 12, 1982. Therefore, no genuine issue of material fact exists as to when Lady Baltimore withdrew: by January 12, 1982.

for summary judgment effectively prays for such interim payments to continue, and to collect unpaid, pre-August, 1986 interim payments. The Fund also seeks interest on these past due payments plus attorney's fees, costs, and an additional amount equal to the greater of (1) the interest on the unpaid contributions, or (2) liquidated damages not in excess of 20% of the unpaid contributions. *See* 29 U.S.C. § 1132(g)(2). Lady Baltimore, in its cross motion for summary judgment, seeks relief from the Court's August 26, 1986 order for it to make interim payments, and Lady Baltimore also requests that payments it has made pursuant to the order be returned to it with interest.

### III. *Discussion*

Summary judgment is appropriate if the parties' submissions demonstrate that there is no *genuine* issue of *material* fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party will be entitled to judgment as a matter of law if the non-moving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

To support its motion for summary judgment the Fund relies on the above-quoted language of 29 U.S.C. §§ 1399(c)(2) and 1401(d). The Fund argues simply that Lady Baltimore's undisputed withdrawal automatically triggered its duty to make interim payments, pending the outcome of arbitration. Lady Baltimore counters with a number of equitable defenses to the Fund's motion, as well as a specific statutory defense which also forms the basis of its own motion. The Court will consider first Lady Baltimore's equitable defenses.

### A. Equitable Defenses

To avoid interim payments, Lady Baltimore raises a number of equitable defenses to withdrawal liability in general. First, Lady Baltimore maintains that the collective bargaining agreement expressly precludes any withdrawal liability in its provision that "all obligations of the Company to said fund" would terminate effective January 12, 1982. Furthermore, Lady Baltimore argues that, since the Fund first objected to and then acquiesced in this language, it is estopped from denying the validity of the liability limitation. Third, Lady Baltimore suggests that the Fund is also estopped from asserting withdrawal liability because it cashed a check, as Lady Baltimore's last pre-withdrawal payment in 1982, restrictively endorsed to preclude any further liability of Lady Baltimore. Fourth, Lady Baltimore maintains that it has already paid to the Fund more than enough money to cover the vested benefits of its employees. Finally, Lady Baltimore argues that the Fund has delayed unduly in asserting its claims, and interim payments should be denied on the basis of laches.

The Fund steadfastly maintains that all of these arguments are immaterial to its demand of *interim* payments, and go only to the issue of withdrawal liability *per se*, which is currently being arbitrated. Indeed, 29 U.S.C. §§ 1399(c)(2) and 1401(d) expressly provide for interim payments pending arbitration, and § 1401(a) makes it clear that all disputes over the assessed withdrawal liability must be arbitrated. Lady Baltimore counters that, as its equitable defenses to withdrawal liability present no factual ambiguities, arbitration is unnecessary, and the Court can deny the Fund interim payments as a matter of law.

■ In making such an assertion Lady Baltimore misconstrues the statutory requirements of the MPPAA. Establishing that a withdrawal liability dispute raises only questions of law will not suffice to remove a case from mandatory arbitration. *I.A.M. National Pension Fund v. Clinton Engines Corp.*, 825 F.2d 415, 422 (D.C.Cir. 1987). Congress was concerned that if employers could use litigation to delay making withdrawal liability payments, the fiscal health of entire pension funds could be severely jeopardized. *Robbins v. Chipman Trucking, Inc.*, No. 85 C 1489 slip op. at 13–14 (N.D.Ill. Dec. 8, 1986) [Available on WESTLAW, 1986 WL 14122]. But this

is not to say a court has no discretion in ordering interim payments. *See Robbins v. McNicholas Transportation Co.,* 819 F.2d 682 (7th Cir.1987). In *McNicholas Transportation,* the pension fund found a withdrawal—probably erroneously—where the employer stopped making contributions after being shut down by a strike. The district court had ordered payment of interim withdrawal liability, pending arbitration, reading the statute as giving it no discretion to refuse to issue such an order. The employer contended that since its assessed *monthly* liability was $71,000, and its current *annual* income (non-operating) was less than $100,000, the district court's order would make its resumption of operations economically impossible. The Court of Appeals vacated and remanded, concluding that

> ... where the trustees bring an action to compel payment, pending arbitration, the court should consider the probability of the employer's success in defeating liability before the arbitrator and the impact of the demanded interim payments on the employer and his business.

*Id.* at 685.

■ But although the Seventh Circuit allows an examination of a case's merits, as well as employer hardship, a substantial allegation of employer hardship remains a threshold prerequisite to the court's exercise of discretion. In *McNicholas Transportation* itself, the district court's order of interim payments was effectively moot because it would have instantly bankrupted the employer. In ordering the district court to exercise discretion on remand, the court deferred to the reasoning of the Pension Benefit Guaranty Corporation, which is statutorily charged to enforce Title IV of ERISA. 29 U.S.C. § 1303(e)(1). The Seventh Circuit quoted a passage from the corporation's brief in another case, part of which read:

> "Ordinarily, in the absence of a demonstration that making interim payments would inflict irreparable injury on an employer, a court should enforce the interim payments requirement without exam-

ining the merits of the underlying dispute concerning withdrawal liability." 819 F.2d at 686. Delaying interim payments, pending arbitration, whenever an employer asserts meritorious defenses to withdrawal liability would directly frustrate Congressional intent that pension funds be secure first, and that such meritorious defenses be arbitrated later. *Id.* at 685.

■ In the case at bar, Lady Baltimore asserts no particular economic hardship from making interim payments. The Seventh Circuit leaves no doubt that "compelled payment of money, recoverable with interest upon later determination of error, is not, in itself, irreparable harm." *Id.* Therefore, since Lady Baltimore cannot allege irreparable harm from making interim payments, the court may not reach its equitable defenses to interim withdrawal liability.

### B. Statutory Defense

The big gun in Lady Baltimore's arsenal of arguments against interim withdrawal liability, which it fires at the expense of all other arguments in its own motion for summary judgment, is that it has been statutorily exempted—in an amendment to the MPPAA drafted specifically for it—from paying any withdrawal liability to the Fund. Passed as part of the massive Tax Reform Act of 1986, Pub.L. No. 99–514, § 1852(i), 100 Stat. 2869 (1986), 29 U.S.C. § 1461(h)(1) states as follows:

> In the case of an employer who entered into a collective bargaining agreement—
>
>> (A) which was effective on January 12, 1979, and which remained in effect through May 15, 1982, and
>>
>> (B) under which contributions to a multiemployer plan were to cease on January 12, 1982,
>
> any withdrawal liability incurred by the employer pursuant to part 1 of subtitle E of this subchapter as a result of the complete or partial withdrawal of the employer from the multiemployer plan before January 12, 1982, shall be void.

The Fund argues that this statutory provision is unconstitutional, but first argues that the court cannot construe the statute's effect on interim liability, it being just another asserted defense for arbitration.

### 1. *Reaching § 1461(h)(1)*

The Fund seeks to delay consideration of this statute's effect, characterizing it as simply one more issue for the arbitration table. But the Fund's contention that the court must allow the arbitrator to first construe § 1461(h)(1) ignores the precise wording of the provision. § 1461(h)(1) would void "any withdrawal liability incurred by the employer pursuant to part 1 of subtitle E...." Part 1 of subtitle E includes 29 U.S.C. § 1401(a), which provides for arbitration of withdrawal liability disputes. § 1461(h)(1) would thus void any finding of liability by the arbitrator *per se.* Therefore, the question of § 1461(h)(1)'s validity is a legal threshold to arbitration. The court is presently concerned only with *interim* withdrawal liability. But if § 1461(h)(1) would nullify all withdrawal liability, even that found ultimately by an arbitrator, it would block interim liability as well. Therefore, the court must decide the provision's validity. *Compare Shelter Framing Corp. v. Pension Benefit Guaranty Corp.,* 705 F.2d 1502, 1508–1509 (9th Cir.1983), *rev'd on other grounds sub nom. Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984) (in dispute over withdrawal liability, district court did not have to leave for arbitration question of MPPAA's constitutionality).

### 2. *Constitutionality of § 1461(h)(1)*

■ On the merits, the Fund's principal argument with respect to § 1461(h)(1) is that it violates substantive due process on its face. The Fifth Amendment provides in part that "No person shall ... be deprived of life, liberty, or property, without due process of law...." U.S. Const. amend. V. It is axiomatic that "one person's property may not be taken for the benefit of another private person without a justifying public purpose...." *Thompson v. Consolidated Gas Utilities Corp.,* 300 U.S. 55, 80, 57 S.Ct. 364, 376, 81 L.Ed. 510 (1937). Due

process forbids a law that is wholly arbitrary and irrational. *See, e.g., Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 650, 94 S.Ct. 791, 801, 39 L.Ed.2d 52 (1974). Furthermore,

> In cases where the legislation in question has retroactive effect, special care must be taken in applying the "arbitrary and irrational" test to determine if there was indeed justification for the added burden which retroactive legislation imposes on those it regulates.

*Peick v. Pension Benefit Guaranty Corp.,* 724 F.2d 1247, 1266 (7th Cir.1983), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3554, 82 L.Ed.2d 855 (1984).

The legislative history of the Tax Reform Act of 1986 provides no clue to the justification for 29 U.S.C. § 1461(h)(1). *See, e.g.,* H.R.Conf.Rep. No. 841, 99th Cong., 2d Sess. 1, *reprinted in* 1986 Code Cong. & Admin.News 4075. However, Lady Baltimore's various briefs suggest why no such justification is forthcoming. Facing the instant lawsuit, Lady Baltimore petitioned its Congressional representatives to relieve it retroactively from its specific liability to the Fund. As a result, Kansas Senator Robert Dole offered what is now ERISA § 4402(h)(1), 29 U.S.C. § 1461(h)(1), as an Amendment to the Tax Reform Act of 1986. The provision tracks precisely terms of Lady Baltimore's collective bargaining agreement "to eliminate Lady Baltimore's withdrawal liability to the Fund." Lady Baltimore's Motion for Immediate Relief from the Court's Order of August 26, 1986 and for Summary Judgment at 2. Indeed, Lady Baltimore is quite candid that "[t]he *sole purpose* of this provision ... was to eliminate Lady Baltimore's withdrawal liability to the Fund." Lady Baltimore's Suggestions in Support of its Motion for Summary Judgment and in Opposition to the Fund's Motion for Summary Judgment at 2 (emphasis added).

With no purpose for altering the liability of one private entity to another—other than to do just that—29 U.S.C. § 1461(h)(1) is wholly arbitrary and irrational. This would be true even if it had no retroactive effect; thus, the fact that § 1461(h)(1)

works retroactively makes it all the more pernicious. Lady Baltimore maintains that § 1461(h)(1) was merely intended to "clarify" ERISA's withdrawal liability provisions. Lady Baltimore's Suggestions in Opposition to the Fund's Motion for Summary Judgment at 9. Lady Baltimore argues that since Congress created withdrawal liability, it is empowered to alter such liability as it sees fit. Defendant's Reply Suggestions in Support of its Motion for Summary Judgment at 5. Lady Baltimore's perception of the legislative process is somewhat Orwellian. Although Congress is certainly entitled to tinker with its legislative schemes, and even to do so retroactively at times, as in the enactment of the MPPAA, Congress cannot redistribute property among private parties solely for the benefit of one of those parties. 29 U.S.C. § 1461(h)(1) embodies a blatant violation of substantive due process.

But perhaps even more insidiously, the enactment of § 1461(h)(1) violated *procedural* due process as well. It is difficult to distinguish precisely "legislative" action, which promulgates rules for society, from "judicial" action, which applies these rules to disputes between particular parties. But informing this distinction is the right of affected persons to be heard, which we demand in judicial fora and limit with respect to legislatures. *See e.g., Bi–Metallic Investment Co. v. State Board of Equalization,* 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915); *Londoner v. Denver,* 210 U.S. 373, 28 S.Ct. 708, 52 L.Ed. 1103 (1908). Indeed,

"the case for due process protection grows stronger as the identity of the persons affected by a government choice becomes clearer; and the case becomes stronger still as the precise nature of the effect on each individual comes more determinately within the decisionmaker's purview. For when government acts in a way that singles out identifiable individuals—in a way that is likely to be premised on suppositions about specific persons—it activates the special concern about being personally *talked to* about the decision rather than simply being *dealt with.*"

*O'Bannon v. Town Court Nursing Center,* 447 U.S. 773, 801, 100 S.Ct. 2467, 2483, 65 L.Ed.2d 506 (1980) (Blackmun, J., concurring) (quoting L. Tribe, *American Constitutional Law,* § 10–7, pp. 503–504 (1978) (emphasis in original)).

In the case at bar, the dispute between an employer and a pension fund, as to the former's liability to the latter under certain provisions of the MPPAA, *a fortiori* calls for a judicial forum in which both parties may be heard. The employer brazenly admits its efforts to evade such a forum:

Lady Baltimore has provided the Congress, through Senator Dole, basically the same factual information provided this Court in this case concerning why the withdrawal liability provisions of ERISA would produce unduly harsh results if applied to Lady Baltimore. Congress determined that this is not a factual situation in which it intended withdrawal liability to be assessed and has enacted the transition rule at issue here to eliminate the possibility of such liability.

Defendant's Reply Suggestions in Support of its Motion for Summary Judgment at 6–7. It is for the courts, and not Congress, to apply the law to a particular "factual situation." In such an application, the parties to the given "factual situation" have a right to be heard. The Fund was denied this right when Congress "adjudicated" Lady Baltimore's liability to it. Therefore, 29 U.S.C. § 1461(h)(1) violates procedural due process.

29 U.S.C. § 1461(h)(1) is unconstitutional, and therefore invalid, on the alternate grounds that it violates substantive due process and procedural due process.[2]

---

**2.** Lady Baltimore suggests rather half-heartedly that the court cannot strike down this provision without giving the United States a chance to intervene. Under 28 U.S.C. § 2403(a), the court must certify to the Attorney General any constitutional attack on a statute "affecting the public interest." If this phrase is to have any meaning, it cannot apply to a provision enacted solely to satisfy parochial desires. *Compare Cox v. Schweiker,* 684 F.2d 310, 319 (5th Cir.1982) (statute is not one "affecting the public interest" if it is no longer on the books and thus can only

### 3. *Severability of § 1461(h)(1)*

 Having found § 1461(h)(1) unconstitutional, it is necessary to determine the extent, if any, to which it taints the rest of ERISA's statutory framework. The Supreme Court has warned that when striking down a provision "a court should refrain from invalidating more of the statute than is necessary." *Regan v. Time, Inc.*, 468 U.S. 641, 652, 104 S.Ct. 3262, 3269, 82 L.Ed.2d 487 (1984). *Buckley v. Valeo*, 424 U.S. 1, 108–109, 96 S.Ct. 612, 677–78, 46 L.Ed.2d 599 (1976) elaborated the test for what is "necessary":

> Unless it is evident that the legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law.

There can hardly be doubt that Congress originally intended to enact ERISA without § 1461(h)(1), and that ERISA will be "fully operative" without it. § 1461(h)(1) does not represent any legitimate component of a legislative scheme, but rather the litigation tactic of a single, private entity. § 1461(h)(1) can be severed from ERISA without fear.

### C. Details of Judgment

As Lady Baltimore's equitable defenses to withdrawal liability are a matter for arbitration, and Lady Baltimore's statutory exemption is unconstitutional, the Fund is entitled to summary judgment. Therefore, the monthly interim payments that the court has ordered to be paid since August, 1986 must continue pending the outcome of arbitration. In addition, the Fund is entitled to payments due during the period of February, 1984 through July, 1986, and appropriate interest on those payments. *See Robbins v. McNicholas Transportation Co.*, 819 F.2d 682, 686 (7th Cir.1987).

The Fund has also requested liquidated damages, costs, and attorney's fees pursuant to 29 U.S.C. § 1132(g)(2). Since neither party, in its plethora of briefs, bothered to

address this provision, the court will make no determination at this time.

### IV. *Conclusion*

ERISA § 4402(h)(1), 29 U.S.C. § 1461(h)(1), is hereby declared null and void. The Fund's motion for summary judgment is hereby granted. Accordingly, Lady Baltimore's motion for summary judgment is denied. Interim withdrawal liability payments, ordered by this court in August, 1986 to be paid monthly, shall continue pending the final arbitration of Lady Baltimore's total withdrawal liability. In addition, Lady Baltimore is hereby ordered to pay the Fund its interim withdrawal liability for the period of February, 1984 through July, 1986, plus appropriate interest on that amount. Within ten days the Fund shall submit to this court a statement of the past-due interim withdrawal liability plus interest.

---

affect parties to instant case); *Keyes v. Madsen*, 179 F.2d 40, 43 (D.C.Cir.1949), *cert. denied*, 339 U.S. 928, 70 S.Ct. 628, 94 L.Ed.2d 1349 (1950)

(matter of merely local concern does not trigger § 2403(a)). Therefore, § 2403 does not apply to the case at bar.