**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, a pension trust, and Marion M. Winstead, Robert C. Sansone, Robert J. Baker, Howard McDougall, Arthur H. Bunte, Jr., R. Jerry Cook, R.V. Pulliam, Sr., and Harold D. Leu, the present Trustees, Plaintiffs,**

v.

**LADY BALTIMORE FOODS, INC., a Kansas corporation, Defendant.**

**No. 90 C 3007.**

United States District Court,
N.D. Illinois, E.D.

June 14, 1991.

Supplementary Memorandum Opinion and Order June 20, 1991.

Thomas Joseph Angell, Jacobs, Burns, Sugarman & Orlove, Chicago, Ill., James Dominick O'Connell, Central States Law Dept., Rosemont, Ill., for plaintiffs.

James Cunningham Murray, Jr., James E. Hanlon, Jr., Katten, Muchin & Zavis, Chicago, Ill., David L. Wing, Spencer, Fane, Britt & Browne, Kansas City, Mo., for defendant.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

The plaintiff pension trust and its present trustees ("the Fund") ask us to declare the "Lady Baltimore Amendment" to the Employee Retirement Income Security Act of 1974 ("ERISA"), Pub.L. 99–514, Title XVIII, § 1852(i) codified at 29 U.S.C. § 1461(h)(1) ("Amendment") unconstitutional and to vacate the arbitrator's restoration of attorneys' fees, costs and liquidated damages to Lady Baltimore. The Fund alleges jurisdiction under ERISA, § 4301(c), 29 U.S.C. § 1451(c), and 28 U.S.C. § 1331. Lady Baltimore likewise seeks summary judgment on the constitutionality of the Amendment and the enforcement of the arbitrator's decision to restore attorneys' fees, costs, and liquidated damages. Lady Baltimore also seeks fees incurred in this action, the prior district court action, and arbitration pursuant to 29 U.S.C. §§ 1132(g)(1) and 1451(c).

The question of the Amendment's constitutionality is not newly before this court. In *Robbins v. Lady Baltimore Foods, Inc.*, 678 F.Supp. 1323 (N.D.Ill.1987), the court determined that the Amendment violated both procedural and substantive due process. In *Robbins v. Lady Baltimore Foods, Inc.*, 868 F.2d 258 (7th Cir.1989), however, the Seventh Circuit vacated the district court's finding of unconstitutionality as unnecessary to the determination of the actual issue before that court, which was whether interim withdrawal liability

payments should be made, and as premature inasmuch as the language of the Amendment did not clearly apply to Lady Baltimore.

For the following reasons, we deny the Fund's motion for summary judgment and grant Lady Baltimore's motion for summary judgment on the constitutionality of the Amendment. We vacate the arbitrator's restoration of liquidated damages, attorneys' fees, and costs to Lady Baltimore; however, we order the restoration of liquidated damages plus interest to Lady Baltimore. The parties will bear their own attorneys' fees.

*Background*[1]

As amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), ERISA requires that an employer withdrawing from a multiemployer pension plan shall pay "withdrawal liability" to the pension fund. 29 U.S.C. §§ 1381–1405. Lady Baltimore had been a contributing employer to the Funds according to a collective bargaining agreement with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. On January 12, 1979, prior to the enactment of MPPAA, Lady Baltimore entered a new collective bargaining agreement, to remain in effect until May 15, 1982, which included the following provision:

> Section 7. Effective January 12, 1982 all contributions to the Central States Southeast and Southwest Areas Pension Fund shall cease, Sections 1, 2, 3, 4, 5, and 6 of this Article shall be null and void and of no further force and effect and all obligations of the Company to said fund or under any trust agreement

shall be terminated. From that date forward regular employees shall be eligible to enter into the Company's pension plan pursuant to the terms and provisions of that plan.

In April 1982, Lady Baltimore made its last contribution to the fund. On December 20, 1983, the Fund sent Lady Baltimore a notice and demand for payment of withdrawal liability in the amount of $216,488.80. On November 16, 1984, Lady Baltimore requested arbitration pursuant to 29 U.S.C. § 1401(a).[2]

On November 1, 1985, the Fund filed suit in this court to force Lady Baltimore to make interim payments of the withdrawal liability pending the final decision of the arbitrator.[3] On August 26, 1986, the court ordered Lady Baltimore to begin making withdrawal liability payments as they came due in the future.

On October 22, 1986, the Tax Reform Act of 1986 became law; the Act included the following provision, which had been sponsored by Senator Dole:

> In the case of an employer who entered into a collective bargaining agreement—
> (A) which was effective on January 12, 1979, and which remained in effect through May 15, 1982, and
> (B) under which contributions to a multi employer plan were to cease on January 12, 1982, any withdrawal liability incurred by the employer pursuant to part 1 of subtitle E of this subchapter as a result of the complete or partial withdrawal of the employer from the multiemployer plan before January 12 [16], 1982, shall be void.

Pub.L. No. 99–514, § 1852(i), 100 Stat. 2869 (October 22, 1986) (codified at 29 U.S.C.

---

**1.** The parties submitted a joint statement of stipulated facts to the arbitrator and agreed to be bound by them in any subsequent proceeding. Arb.Stip., R. 367.

**2.** 29 U.S.C. § 1401(a)(1) provides in part:

> Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration.

Arbitration is viewed as the equivalent of exhaustion of administrative remedies. *Robbins*

*v. Admiral Merchants Motor Freight, Inc.,* 846 F.2d 1054, 1056 (7th Cir.1988).

**3.** Such interim payments must be made pursuant to 29 U.S.C. § 1399(c)(2):

> Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor under subsection (b)(1) of this section beginning no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determination of the amount of such liability or of the schedule.

§ 1461(h)(1)) [later amended by Pub.L. No. 101–239, Title VII, § 7862(a), 7894(h)(5)(A), 103 Stat. 2106, 2431 (December 19, 1989) ].[4]

The Fund filed for summary judgment to compel interim payments pending arbitration and on October 27, 1986, Lady Baltimore filed a cross-motion for summary judgment in the district court in part on the basis of this Amendment. The district court granted summary judgment to the Fund, denied Lady Baltimore's motion for summary judgment, and ordered that Lady Baltimore pay past due payments plus interest. *Lady Baltimore*, 678 F.Supp. 1323, having found the Amendment in its original form to be unconstitutional. In a separate order issued on March 17, 1988, the district court granted the Fund $34,065.97 in liquidated damages pursuant to 29 U.S.C. § 1132(g)(2)(C) as well as $8,197.50 in counsel fees and $135.00 in costs under 29 § 1132(g)(2)(D). R. 829–40. The Seventh Circuit affirmed that portion of the district court decision requiring that interim payments be made, vacated the holding that the Amendment was unconstitutional, and remanded the matter for arbitration. *Lady Baltimore*, 868 F.2d at 265.

Lady Baltimore later prevailed in arbitration before arbitrator Anthony M. Vernava

on the strength of the newly-amended Amendment (the Fund conceded that Lady Baltimore fell squarely under the Amendment's protection). On May 22, 1990, the arbitrator (assuming the constitutionality of the Amendment) found that Lady Baltimore's withdrawal liability was void, ordered the return of $324,965.07 in withdrawal benefits already paid together with interest. The arbitrator also determined that because Lady Baltimore was not obligated to pay withdrawal liability, it was likewise entitled to a refund of the liquidated damages, attorneys' fees, and costs. R. 507.[5]

Now the Fund advances a number of arguments in support of its renewed request that we find the Amendment unconstitutional. In addition, the Fund argues both that the arbitrator did not have the authority to direct the Fund to return the liquidated damages, attorneys' fees, and costs awarded by the district court and that there is in any case no provision in the statute to refund such awards. Lady Baltimore likewise seeks summary judgment.

### Discussion [6]

For defendants to prevail on a summary judgment motion, "the pleadings, deposi-

---

**4.** The Amendment as originally enacted in 1986 voided withdrawal liability for withdrawal prior to January *12*, 1982, while Lady Baltimore in fact withdrew on January *16*, 1982. The Seventh Circuit noted this discrepancy, commenting that if the Amendment did not apply to Lady Baltimore, then the district court's opinion on the constitutionality of the Amendment is " 'is pretty close to an advisory opinion in the literal sense.' " *Lady Baltimore*, 868 F.2d at 263, *quoting Peick v. Pension Benefit Guaranty Corp.*, 724 F.2d 1247, 1278 (7th Cir.1983) (Eschbach, J., dissenting), *cert. denied*, 467 U.S. 1259, 104 S.Ct. 3554, 82 L.Ed.2d 855 (1984).

Lady Baltimore admits in its Stipulations in Arbitration that this "defect" in the original amendment was then put to rights when Lady Baltimore requested the change that led to the revised version of the Amendment altering the withdrawal date to January *16*, 1982, allegedly to accommodate Lady Baltimore. Arb.Stip., R. 371, ¶ 34. The 1989 Budget Act amended § 4402(h)(1) providing:
SEC. 7862. AMENDMENTS RELATED TO TITLE XVIII OF THE REFORM ACT
(a) Amendment Related to Section 1852 of the Reform Act.—Paragraph (1) of section 4402(h) of ERISA is amended by striking

"January 12, 1982" the second place it appears and inserting "January 16, 1982."
Pub.L. No. 101–239, 103 Stat. 2106, 2431.

**5.** The only alleged dispute of material fact is whether the March 17, 1988 award of damages, fees, and costs by the district court was appealed and affirmed by the Seventh Circuit. The arbitrator remarked that both the interim payment issue and the award of liquidated damages, fees, and costs were appealed to the Seventh Circuit, but the Seventh Circuit opinion is silent on the latter award and expressly affirms only the district court's award of interim payments. *Lady Baltimore*, 868 F.2d at 265.

**6.** Lady Baltimore protests that the Fund has once again failed to comply with Local Rule 22 and with 28 U.S.C. § 2403(a). Indeed on May 25, 1990, the Fund filed a notice of claim of unconstitutionality under Local Rule 22. As a threshold matter Lady Baltimore argues as it did unsuccessfully in the earlier district court matter that the court must provide notice to the Attorney General "[i]n any action, suit, or proceeding in the court of the United States to which the United States or any agency, officer or employee thereof is not a party, wherein the

tions, answers to interrogatories, and admissions on file, together with affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). At this stage, we do not weigh evidence or determine the truth of asserted matters. We simply determine whether there is a genuine issue for trial, i.e. "whether a proper jury question was presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If the nonmoving party bears "the burden of proof at trial on a dispositive issue, [however] ... the nonmoving party [is required] to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), quoting Fed.R.Civ.P. 56(e). As we find no disputes of material fact, we move to the legal arguments.

## I. The Constitutionality of the Lady Baltimore Amendment

While the Seventh Circuit vacated the district court's ruling that the Amendment was unconstitutional because the district court had reached the issue unnecessarily, the Amendment has now been applied squarely to Lady Baltimore's withdrawal liability obligation, and the Fund does not dispute that, under the narrow provisions of the Amendment, Lady Baltimore is relieved of its withdrawal liability obligation. The Fund now renews its attack on the Amendment, arguing that it violates substantive due process, equal protection, procedural due process, the Takings Clause, and the requirement of separation of powers. Finally, the Fund seeks to invalidate the Amendment as constituting a forbidden Bill of Attainder.

### A. Substantive Due Process

 The Funds argue that it is impermissible for Congress to take property from one private entity and give it to another private entity, when no *public* good is served. *Thompson v. Consolidated Gas Utilities Corp.*, 300 U.S. 55, 79, 57 S.Ct. 364, 375, 81 L.Ed. 510 (1937). The leading case to guide us in these matters is *Usery v. Turner–Elkhorn Mining Co.*, 428 U.S. 1, 15–16, 96 S.Ct. 2882, 2892–93, 49 L.Ed.2d 752 (1976), which counsels that

> [i]t is now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in any arbitrary and irrational way ... our cases are clear that legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations.

*Id.* See *Peick*, 724 F.2d at 1265 (using the *Turner–Elkhorn* standard rather than a Contract Clause analysis suggested by a *Nachman v. Pension Benefit Guaranty Corp.*, 592 F.2d 947 (7th Cir.1979), *aff'd*, 446 U.S. 359, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980) to examine the constitutionality of MPPAA). The court, however, must exercise special care when assessing retroactive legislation to determine whether its retroactivity is "rationally and non-arbitrarily related to legislative goals." *Peick*, 724 F.2d at 1266, *citing Turner–Elkhorn*, 428 U.S. at 16, 96 S.Ct. at 2892. Further, it is for Congress, rather than the courts, to decide whether legislation is appropriate. *Ferguson v. Skrupa*, 372 U.S. 726, 729, 83 S.Ct. 1028, 1030, 10 L.Ed.2d 93 (1963). It is not for the judiciary to concern itself with the "wisdom, need, or appropriateness of the legislation." *Olsen v. Nebraska ex rel. Western Reference & Bond Ass'n*, 313 U.S.

---

constitutionality of any Act of Congress affecting the public interest is drawn in question." 28 U.S.C. § 2403(a). The district court discounted this provision, determining that this matter, the effect of which was so very narrow, hardly affects "the public interest." *Cox v. Schweiker*,

684 F.2d 310, 319 (5th Cir.1982). *Lady Baltimore*, 678 F.Supp. at 1329 n. 2. Because of the narrow scope of this legislation, we would agree that the provision of 28 U.S.C. § 2403 need not come into play.

236, 246, 61 S.Ct. 862, 865, 85 L.Ed. 1305 (1941).

■ The district court relied on the above authority and the apparent absence of legislative history regarding the impetus behind the Amendment in concluding that Congress was motivated by no discernible public purpose in enacting § 1461(h)(1) and that the Amendment was therefore arbitrary and irrational. *Lady Baltimore*, 678 F.Supp. at 1328. In addition, Judge Decker said that the fact that the Amendment operates retroactively "makes it all the more pernicious." *Id.* at 1329. The court was not persuaded by the assertion that Congress is permitted to tinker with any provision that it has created, arguing that the view that Congress may freely redistribute private property for the sole benefit of one private party is "Orwellian." *Id.*

The Fund stresses once again that the legislation was aimed very specifically at lifting the burden from Lady Baltimore at the expense of the Fund and that the Legislature enunciated no public purpose. Indeed, the Fund notes Senator Metzenbaum's complaint that the Amendment constitutes "a special relief act [that grants Lady Baltimore relief] by passage of retroactive legislation surreptitiously attached to a budget bill." 135 Cong.Rec.S. 16660 (daily ed., Nov. 21, 1989). The House Conference Report addressing the amended date is equally clear: "The change in the effective date of the MPPAA of 1980 with respect to a certain employer is modified to change the effective date from January 12, 1982, to January 16, 1982...." H.R.Conf. Rep. No. 841, 99th Cong.2d Sess 1, *reprinted in* 1986 U.S.Code Cong. & Admin.News. 4075, 4939. But the question before us is whether this narrowly focussed legislation is therefore so clearly arbitrary and irra-

tional as to "preclude the assumption that it rests upon some rational basis." *United States v. Carolene Products Co.*, 304 U.S. 144, 152, 58 S.Ct. 778, 783, 82 L.Ed. 1234 (1938).

Lady Baltimore argues that the fact that legislation adversely affects or benefits only one entity does not destroy the presumption of rationality. *City of New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). In *Dukes*, the Court found that the fact alone that the ordinance challenged affected the interests of only a few New Orleans pushcart vendors did not make it irrational. Rather, the overriding test was whether the legislature operated on a rational basis. In both *Dukes* and *Maine Central R. Co. v. B.M.W.E.*, 813 F.2d 484 (1st Cir.), *cert. denied*, 484 U.S. 825, 108 S.Ct. 91, 98 L.Ed.2d 52 (1987), a legitimate state interest was found that went beyond the immediate interests of the few parties affected. Lady Baltimore asserts that the Fund has succeeded in arguing only that Congress has passed an act that affects specific individuals, but has not borne its burden of demonstrating that § 1461(h)(1) is for that reason alone arbitrary or irrational.

We will not deny that the lack of legislative history with regard to the Amendment at issue has given us pause. Senator Metzenbaum's comments and the excerpts from Lady Baltimore's pleadings below [7] do, to some extent, create an odor of impropriety. We find, however, that we cannot properly consider this Amendment in a vacuum given Congress's history of post-enactment adjustments to MPPAA.

Since its enactment in 1980, MPPAA has been the subject of judicial and congressional examination on several occasions. When originally enacted, MPPAA became law on September 26, 1980, but its effective

---

7. For example:

Lady Baltimore asked Congress to clarify that the ERISA withdrawal liability provisions were not meant to apply to it. An amendment by Senator Dole to the Senate version of the Tax Reform Act covered the specific Lady Baltimore situation. (Defendant's Response to Plaintiff's Motion to Compel Interim Payments at 4–5. (R. 769–70)).

[Lady Baltimore] has sought assistance from Congress in resolving its dispute with the

Fund. Senator Dole of Kansas submitted an amendment to the Tax Reform Act of 1986 on Lady Baltimore's behalf to clarify congressional intentions concerning the imposition of multiemployer withdrawal liability and to eliminate the dispute over withdrawal liability for this employer. (Lady Baltimore's Suggestions in Opposition to the Fund's Motion for Summary Judgment at 9. (R. 784)).

date was set five months earlier on April 29, 1980. The onerousness of this retroactivity provision was subject to continued attack until the Supreme Court settled the question by approving the retroactive effect in *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 730–31, 104 S.Ct. 2709, 2718–19, 81 L.Ed.2d 601 (1984) (the retroactivity of MPPAA is justified because "[o]ne of the primary problems Congress identified under ERISA was that the statute encouraged employer withdrawals from multiemployer plans. And Congress was properly concerned that employers would have an even greater incentive to withdraw if they knew that legislation to impose more burdensome liability on withdrawing employers was being considered.").

Hard on the heels of this ruling, Congress itself had second thoughts about MPPAA's retroactivity, and on July 18, 1984, Congress amended the effective date of MPPAA to eliminate its retroactive application. Pub.L. No. 98–369, § 558(a)(1), 98 Stat. 494, 899 (1984), codified at 29 U.S.C. § 1381 [§ 588]. This change in MPPAA of course engendered a new round of litigation addressing whether § 558 was unconstitutional because it deprived funds of property without due process. Examining the legislative purpose behind the change, the court in *Long Island Oil Products, Inc. v. Local 553 Pension Fund*, 775 F.2d 24, 28–29 (2d Cir.1985), found that Congress's own explanation of its rationale sufficed: MPPAA retroactivity was unduly burdensome on employers that withdrew between April and September 1980, and the retroactivity provision had served its original purpose, which was to discourage employers from withdrawing in anticipation of MPPAA. In upholding the constitutionality of § 558, the *Long Island* court said:

Congress singled out a group of employers it believed were treated unfairly under the provisions of a previous Act. That determination seems reasonable. Congress acted to correct this perceived inequity.... Such legislation may not be stricken simply because it arguably shifts some burdens to multi-employer plans, other employers, and the PBGC; nor should a court consider itself a 'super-legislature' and reevaluate the balance that Congress has struck. (citations eliminated).

*Long Island*, 775 F.2d at 29.[8]

We also note that Congress made a very similar and narrow accommodation for an individual or group in Pub.L. 98–369, § 558(d), 98 Stat. 899 (July 18, 1984) [29 U.S.C. § 1381, note]:

(d) Special rule for certain binding agreements. —In the case of an employer who, on September 26, 1980, has a binding agreement to withdraw from a multiemployer plan, subsection (a)(1) shall be applied by substituting 'December 31, 1980' for 'September 26, 1980.'

This provision, like the subsequent Amendment that we examine, address admittedly narrow situations, but ones that Congress could rationally have decided required correction in light of Congress's decision to change the retroactive application of MPPAA. While we are not entirely comfortable ascribing motivation to Congress, the impetus behind the Amendment and the above provision seems to us to be clear. We are less inclined to assume, as Lady Baltimore has suggested, that Congress was motivated by the Fund's alleged initial refusal to accept contributions from Lady Baltimore and the fact that Lady Baltimore had already paid in more than its fair share to the Fund.

---

**8.** The *Long Island* court also addressed the argument that the legislative history was not detailed enough to support a finding of constitutionality. The court said that

[t]he Constitution does not require that Congress provide a detailed justification for its actions. And, while the existence of detailed legislative history occasionally provides valuable assistance to courts interpreting legislation, there is no power to require it. In *R.A.*

*Gray & Co.*, for example, the Court observed "We have doubts ... that retroactive application of the MPPAA would be invalid under the Due Process Clause for lack of notice even if it was suddenly enacted by Congress without any period of deliberate consideration, as often occurs with floor amendments or 'riders' added at the last minute to pending legislation." 104 S.Ct. at 2719.

*Long Island*, 775 F.2d at 31.

In sum, even in the absence of clear legislative history to support the enactment of the Amendment, we are not prepared to *presume* that this narrowly tailored provision is irrational and arbitrary. Indeed, we are obliged to do just the opposite. *Turner–Elkhorn*, 428 U.S. at 15–16, 96 S.Ct. at 2892–93. Nor are we in a position to pass judgment on whether this was a wise move on Congress's part. *See Olsen*, 313 U.S. at 246, 61 S.Ct. at 865. As the Court in *Long Island Oil* noted,

> Congress has vast discretion when adjusting and distributing the economic benefits and burdens relating to employers, plans and a government agency. It is not our task to decide who should receive what benefit, and at whose expense.

*Long Island*, 775 F.2d at 29.

By the same token, we cannot say that the Amendment was not a rational part of Congress's larger scheme to adjust MPPAA to promote fairness among all parties affected by it.

### B. *Equal Protection*

■ The Fund next argues that the Amendment violated the Equal Protection Clause of the Fifth Amendment because it singles out a class of one as a favored constituent. *See Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954) (Equal Protection Clause of the Fifth Amendment applies to congressional action). On the other hand, economic legislation "that does not employ suspect classifications or impinge on fundamental rights must be upheld against equal protection attack when the legislative means are rationally related to a legitimate governmental purpose." *Hodel v. Indiana*, 452 U.S. 314, 331, 101 S.Ct. 2376, 2387, 69 L.Ed.2d 40 (1981). The *Hodel* Court went on to say that a provision will fail under this analysis if its "treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that (a court) can only conclude that the legislature's actions were irrational." *Id.* As in due process analysis, "such legislation carries with it a presumption of rationality that can only be overcome by a clear showing of arbitrariness or irrationality." *Id.* at 331–32, 101 S.Ct. at 2386–87. Again, we cannot say that Congress's move to adjust the provisions of MPPAA is so irrational and arbitrary as to fall outside of that body's legitimate purpose in shifting economic burdens.

### C. *Procedural Due Process*

We give short shrift to the Fund's half-hearted attempt to argue that Congress was obliged to provide due process but failed to do so and that the Amendment is unconstitutional for this reason. Indeed, the Fund does not renew the argument that the district court relied on in finding a procedural due process violation. *Lady Baltimore*, 678 F.Supp. at 1329. The parties have stipulated in any event that the Fund was aware of the proposed Amendment and lobbied against it. Arb.Stip. ¶ 37, R. 371.

### D. *Takings Clause*

■ The Fund argues that at the time of the enactment of the Amendment it had a property interest in the withdrawal liability allegedly owed by Lady Baltimore. The Fund asserts that this property interest was taken without just compensation and without a public purpose. Whether the Fund had a property interest in the withdrawal liability at the time of the enactment is a thorny matter we need not reach because we find the reasoning in *Connolly v. Pension Benefit Guarantee Corp.*, 475 U.S. 211, 222–23, 106 S.Ct. 1018, 1024–25, 89 L.Ed.2d 166 (1986), to be instructive. In that case the Court rejected the argument that MPPAA withdrawal liability is a prohibited taking, stating that

> [i]n the course of regulating commercial and other human affairs, Congress routinely creates burdens for some that directly benefit others.... Given the propriety of the governmental power to regulate, it cannot be said that the Taking Clause is violated whenever legislation requires one person to use his or her assets for the benefit of another.

The Court went on to quote *Turner–Elkhorn,* which stated that "legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations.... This is true even though the effect of the legislation is to impose a new duty or liability based on past acts." *Turner–Elkhorn,* 428 U.S. at 15–16, 96 S.Ct. at 2892–93, *quoted in Connolly,* 475 U.S. at 223, 106 S.Ct. at 1025. We find this approach to be dispositive of the takings argument, finding as we have that Congress's decision to enact the Amendment was rational.

### E. *Separation of Powers*

■ The Funds argue that the Constitution reserves to the judiciary the exercise of judicial powers and such reservation is offended in this instance by Congress's move to relieve Lady Baltimore of withdrawal liability after the entry of the district court award of liquidated damages, attorneys' fees, and costs. The Fund argues that the sole purpose of the Amendment was to benefit Lady Baltimore by depriving the Fund of a final judgment. The Fund argues that the "pragmatic, flexible approach" to separation of powers questions advocated in *Nixon v. Administrator of General Serv.,* 433 U.S. 425, 442, 97 S.Ct. 2777, 2789, 53 L.Ed.2d 867 (1977), is not possible here because, unlike the *Nixon* situation, no broad policy function for the legislation is being put forth. We disagree.

It is certainly true that Congress may not interfere with a final judgment (*Fleming v. Rhodes,* 331 U.S. 100, 67 S.Ct. 1140, 91 L.Ed. 1368 (1947)), but we do not consider the district court determination that delinquent interim payments must be made as a final judgment, dependent as it is on the ultimate outcome of arbitration on the merits. Attendant on the district court's determination that Lady Baltimore was delinquent in its obligations *at that time,* was the mandatory assessment of the statutory penalties found in 29 § 1132(g)(2). But the case had not ended at that point. Arbitration was in train and the arbitrator is empowered by the statute to refund any overpayments with interest, determine whether there have been underpayments, or as the arbitrator did here, determine that there is no withdrawal liability.

The Fund maintains that the award of attorneys' fees, costs, and liquidated damages was in fact appealed to the Seventh Circuit, but we note once again that the opinion gives no indication that the court considered these matters. *Lady Baltimore,* 868 F.2d 258. In its reply brief, the Fund objects to Congress's intervention in active litigation, but we would note that as a practical matter Congress would be foreclosed from making any changes at all in such controversial statutes as MPPAA if it were obliged to wait until all litigation had ceased. In any case, as our discussion below will indicate, we find that the assessment of liquidated damages is so intimately tied to a determination of withdrawal liability that such an assessment may not stand in a situation such as this one where withdrawal liability is determined to be void.

### F. *Bill of Attainder*

■ Article I, Sec. 9, Cl. 3 of the Constitution provides that Congress may enact no bill of attainder; a bill of attainder is a statute that applies "either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial." *U.S. v. Lovett,* 328 U.S. 303, 315, 66 S.Ct. 1073, 1078, 90 L.Ed. 1252 (1946). The Fund maintains that here the intended party to be benefitted by the Amendment is certainly readily ascertainable and that the Fund was as a consequence singled out for "punishment" without benefit of judicial trial. The Fund quotes from 2 L. Rotunda, J. Nowak, & J. Young, *Treatise on Constitutional Law Substance and Procedure,* 121–22 (1986) for the proposition that

> [W]henever the Court is confronted with the claim that legislation constitutes a bill of attainder, it must determine whether the designation of persons based on past conduct simply names individuals for punishment or whether the designation promotes a *nonpunitive*

goal based on reasonable criteria over which the individual has some control. However,

> [t]hat burdens are placed on citizens by federal authority does not make those burdens punishment.... [there is no bill of attainder merely because an] individual or defined group is tainted whenever he or it is compelled to bear burdens which the individual or group dislikes.... This view would cripple the very purpose of legislating, for any individual or group that is made the subject of adverse legislation can complain that the lawmakers could and should have defined the relevant affected class at a greater level of generality.

*Nixon,* 433 U.S. at 470, 97 S.Ct. at 27.

Lady Baltimore maintains, and we agree, that there was no punishment here in the sense proscribed by the Constitution, but that Congress was merely righting an inequity and shifting economic burdens. Consequently, we find that the Amendment does not constitute a forbidden bill of attainder.

II. Arbitrator Erred in Returning Liquidated Damages and Attorneys' Fees because MPPAA does not Allow such a Refund and the Arbitrator May not Overturn a District Court Decision

 The arbitrator, applying the amended form of the Amendment in Lady Baltimore's favor, found that "any withdrawal liability incurred by the employer ... as a result of the complete or partial withdrawal of the employer from the multiemployer plan before January 16, 1982, shall be void." 29 U.S.C. § 1461(h)(1). The arbitrator accordingly restored all interim payments with interest, which he was empowered to do under 29 U.S.C. § 1401(d). The arbitrator also ordered the refund of the district court's award of liquidated damages, costs, and attorneys' fees. The Fund now argues that the arbitrator could refund the interim payments and interest only but not the other fees for two reasons:

1. MPPAA does not provide for a refund of these mandatory awards; and

2. MPPAA does not authorize an arbitrator to overturn or modify a court decision making such awards.

Both of these contentions are true enough. The arbitrator did exceed his authority when he decided to restore the liquidated damages, costs, and attorneys' fees that had been awarded by the district court judge. Clearly, an arbitrator may determine the withdrawal liability and adjust for any overpayment or underpayment. 29 U.S.C. §§ 1401(a) and (d); 29 C.F.R. § 2641.7 (1985). An arbitrator may also award attorneys' fees 29 U.S.C. § 1401(a)(2). However, the arbitrator is given no express authority to overturn a district court's award made under 29 U.S.C. § 1132(g)(2). Consequently, we vacate the portion of the arbitrator's decision that restores those monies to Lady Baltimore following the arbitrator's quite proper finding that the Amendment rendered Lady Baltimore free of any withdrawal liability.

The statute is also silent regarding the refund of attorneys' fees, costs, and liquidated damages awarded by the court in a civil enforcement action under circumstances such as these where arbitration ultimately determines that no withdrawal liability is owing after all. It is beyond cavil that § 1132(g)(2) is a *mandatory (See United Retail and Wholesale Employees Teamsters Union Local No. 115 Pension Plan v. Yahn & McDonnell, Inc.,* 787 F.2d 128, 134 (7th Cir.1986))* provision:

> (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court *shall* award the plan—
>
> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of—
>
> (i) interest on the unpaid contributions, or
>
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under

Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

(emphasis supplied).

This mandatory provision is rather strong medicine to be sure, but the effect of it is to encourage plans to respect the MPPAA's "pay now, dispute later" provisions. *See Robbins v. Lady Baltimore Foods*, 678 F.Supp. at 1325. Lady Baltimore's obligation to begin interim payments and keep them up to date was not interrupted by the request for arbitration. 29 U.S.C. § 1399(c)(2). Failure to make these required "interim" payments resulted in the filing of a civil suit in federal district court, and Lady Baltimore was ordered to pay up on the state of the facts and the law at that time.

The Fund can hardly be accused of overreaching when it took Lady Baltimore to court at that point, and we cannot say that Judge Decker erred in enforcing the requirement that interim payments be made. Nor can we say that the assessment of § 1132(g)(2) penalties was inappropriate. In any case, the ultimate return of the interim payments plus interest, which we certainly affirm, made Lady Baltimore whole with respect to any of the voided withdrawal liability that it had already handed over. Lady Baltimore also argues that it is entitled to a refund of attorneys' fees and costs. We disagree because Lady Baltimore brought those charges on itself by failing to honor the "pay now, dispute later" provisions embodied in 29 U.S.C. §§ 1399(c)(2) and 1401(d). *Robbins v. Pepsi-Cola Metro. Bottling Co.*, 800 F.2d 641, 642 (7th Cir.1986) (per curiam).

We do find merit, however, in Lady Baltimore's contention that it should be refunded the liquidated damages of $34,065.97 that were awarded prior to the determination that Lady Baltimore's withdrawal liability was void. To be sure, the statute is silent regarding the return of such an award, so we turn to the legislature's intention in enacting the provision. In short, mandatory liquidated damages awards "compensate the plans for delay and give employers an incentive to be forthcoming with payments." *Central States, S.E. & S.W. Areas Pension Fund v. Gerber Truck Serv.*, 870 F.2d 1148, 1156 (7th Cir.1989). *See Central States, S.E. and S.W. Areas Pension Fund v. Alco Express Co.*, 522 F.Supp. 919, 926–28 (E.D. Mich, 1981) (quoting extensively from the legislative history).

Liquidated damages are based on an estimated anticipated injury and may not be so excessive that they constitute a penalty. Here the computation of liquidated damages was no doubt reasonable at the time, but in light of the function of the Amendment, the sum turns out to have been keyed to a phantom anticipated injury. By the terms of the Amendment the liability is rendered void; therefore, we find that the sum of $34,065.97 must be returned with interest to Lady Baltimore. Any other outcome would constitute an unjustifiable windfall for the Fund and would not in any way serve Congress's purposes in enacting MPPAA.

Finally, we deny Lady Baltimore's request that we award attorneys' fees in its favor on this and the prior district court action. In addition, both parties shall pay their own attorneys' fees arising out of the arbitration.

*Conclusion*

For the foregoing reasons, we deny the Fund's motion for summary judgment regarding the constitutionality of the Lady Baltimore Amendment. We grant Lady Baltimore's motion on the Amendment. We vacate the arbitrator's decision to restore the liquidated damages, attorneys' fees, and costs imposed on Lady Baltimore by the district court, but we order that the return of the interim payments with interest be made. In addition, we restore to Lady Baltimore liquidated damages in the amount of $34,065.97 plus interest. Finally, both parties will bear their own attor-

neys' fees arising out of both district court proceedings and the arbitration.

### SUPPLEMENTARY MEMORANDUM OPINION AND ORDER

We write briefly to clarify the portion our ruling in *Central States v. Lady Baltimore Foods*, No. 90 C 3007, Mem.Op. (June 13, 1991), that deals with attorneys' fees. We vacate the arbitrator's restoration of the attorneys' fees, costs, and liquidated damages that Judge Decker had originally awarded to the Fund on March 17, 1988, pursuant to 29 U.S.C. § 1132(g)(2). However, we restore to Lady Baltimore the same liquidated damages plus interest. In addition, all attorneys' fees and costs incurred in any *other* court or arbitration proceedings are to be borne by the parties themselves.