Loran W. ROBBINS, et al.,
Plaintiffs–Appellees,

v.

LADY BALTIMORE FOODS, INC.,
Defendant–Appellant.

Nos. 87–2753, 88–1280 and 88–1652.

United States Court of Appeals,
Seventh Circuit.

Argued April 21, 1988.

Decided Feb. 14, 1989.

James G. Baker, Spencer, Fane, Britt & Browne, Kansas City, Mo., for defendant-appellant.

Terence G. Craig, Central States Law Dept., Chicago, Ill., for plaintiffs-appellees.

Before WOOD, Jr. and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

KANNE, Circuit Judge.

The defendant, Lady Baltimore Foods, Inc. ("Lady Baltimore"), appeals the district court's grant of summary judgment in favor of the plaintiffs, the trustees of the Central States, Southeast and Southwest Areas Pension Fund ("Pension Fund"). Specifically, Lady Baltimore challenges the district court's decision that 29 U.S.C. § 1461(h)(1) was unconstitutional. This statute purported to exempt Lady Baltimore from withdrawal liability under the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381–1461.[1] Lady Baltimore also challenges the district court's award of interim withdrawal liability payments to the Pension Fund. For the reasons set out below, we affirm the district court's award of interim withdrawal liability payments, but we reverse the grant of summary judgment against Lady Baltimore as to the constitutionality of 29 U.S.C. § 1461(h)(1), vacate the district court's decision that this statute was unconstitutional, and remand the entire matter for arbitration.

## I. Background

### A. *Lady Baltimore's Withdrawal from the Pension Fund*

Lady Baltimore Foods, Inc. was a contributing employer to the Pension Fund under the terms of a collective bargaining agreement with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("the Union"). On January 12, 1979, Lady Balti-

more and the Union executed a new collective bargaining agreement which remained in effect through May 15, 1982. This agreement included the following pension provision:

ARTICLE XVIII—PENSION

Section 7. Effective January 12, 1982 all contributions to the Central States Southeast and Southwest Areas Pension Fund shall cease, Sections 1, 2, 3, 4, 5 and 6 of this Article shall be null and void and of no further force and effect and all obligations of the Company to said Fund or under any trust agreement shall be terminated. From that date forward regular employees shall be eligible to enter into the Company's pension plan pursuant to the terms and provisions of that plan.

The Pension Fund initially refused to approve Lady Baltimore's continued participation in the plan on these terms. By letter of December 24, 1980, however, it reversed its position and agreed to permit Lady Baltimore to continue to participate in the Pension Fund. In April of 1982, after a dispute over the amount of the last payment, Lady Baltimore made its final contribution to the fund.[2]

In December, 1983, the Pension Fund advised Lady Baltimore that it determined that Lady Baltimore owed it withdrawal liability under the MPPAA in the amount of $216,488.80. It also notified Lady Baltimore that it was required to discharge this liability in monthly payments of somewhat less than $5,000.00. The Pension Fund subsequently reduced the assessment of Lady Baltimore's withdrawal liability to $212,797.92 and increased the monthly payment to $5,001.06. Lady Baltimore thereafter requested arbitration of its withdrawal liability.[3]

---

1. The MPPAA amended the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1368.

2. This last payment was made by a restrictively endorsed check. The restrictive endorsement read as follows:

   Accepted by Central States Area Pension Fund in full satisfaction of any present or future

claim or liability of any kind against Lady Baltimore Foods, Inc., its officers, agents or assigns.

3. This arbitration has been pending since on or about November 16, 1984 (Appellant's Brief at 13 n. 1). This arbitration has been held in abeyance during the pendency of this litigation.

## B. *Procedural Posture*

On November 1, 1985, the Pension Fund filed suit in the Northern District of Illinois to compel Lady Baltimore to make interim liability payments pursuant to 29 U.S.C. §§ 1399(c)(2), 1401(d). On December 11, 1985, Lady Baltimore filed its answer denying liability. On June 5, 1986, the Pension Fund filed a motion for summary judgment, requesting continuing and past due interim withdrawal liability payments. On August 26, 1986, the district court entered orders directing Lady Baltimore to pay interim withdrawal liability payments as they became due in the future. It said nothing, however, about past due payments of withdrawal liability.

On October 22, 1986, the Tax Reform Act of 1986 became law. Included in this Act was a statutory provision referred to by appellees as the "Lady Baltimore Amendment." The so-called Lady Baltimore Amendment, Pub.L. No. 99–514, § 1852(i), 100 Stat. 2869 (1986) [codified at 29 U.S.C. § 1461(h)(1)], states as follows:

In the case of an employer who entered into a collective bargaining agreement—

(A) which was effective on January 12, 1979, and which remained in effect through May 15, 1982, and

(B) under which contributions to a multiemployer plan were to cease on January 12, 1982,

any withdrawal liability incurred by the employer pursuant to Part I of Subtitle E [of this Subchapter] [29 U.S.C. §§ 1381–1405] as a result of the complete or partial withdrawal of the employer from the multiemployer plan before January 12, 1982, shall be void.

The Pension Fund claims that Lady Baltimore notified the district court of the pendency of the Lady Baltimore Amendment before it was enacted into law. The Pension Fund, moreover, cites to numerous instances in the record where Lady Baltimore told the district court that this amendment was passed by Congress, supposedly at the urging of Senator Dole of Kansas, specifically to exempt it (Lady Baltimore) from withdrawal liability under MPPAA.

On or about October 27, 1986, Lady Baltimore filed a cross motion for summary judgment with the district court. In this motion for summary judgment, Lady Baltimore asked for relief from the district court's order of August 26, 1986, requiring it to make payments of interim withdrawal liability to the Pension Fund. It did so on two grounds. First, it raised a number of equitable defenses to withdrawal liability in general.[4] Second, Lady Baltimore argued that it was not subject to withdrawal liability because 29 U.S.C. § 1461(h)(1) exempted it from such liability. On October 30, 1986, the district court denied Lady Baltimore's motion for immediate relief from interim withdrawal liability payments, but deferred consideration on the impact of § 1461(h)(1) until its ruling on the motion for summary judgment.

On October 14, 1987, 678 F.Supp. 1323, the district court granted summary judgment in favor of the Pension Fund and against Lady Baltimore. The district court's order first held that MPPAA required Lady Baltimore's asserted equitable defenses to withdrawal liability to be arbitrated. Thus, they could not be considered by it as a basis for excusing the company from making interim withdrawal liability payments. The district court concluded, however, that it *could* consider the effect

---

**4.** First, Lady Baltimore argued that the collective bargaining agreement expressly precluded withdrawal liability by providing that "all obligations of the Company to said fund" would terminate effective January 12, 1982. Second, Lady Baltimore argued that since the Pension Fund first objected to and then acquiesced in this provision, it was estopped from denying the validity of this limitation on its withdrawal liability. Third, Lady Baltimore argued that the Pension Fund also was estopped from asserting that it owed it withdrawal liability because of its cashing of Lady Baltimore's last payment check in April, 1982, which check contained the restrictive endorsement. See note 2, *supra.* Fourth, Lady Baltimore maintained that it already had paid more than enough money to the Pension Fund to cover the vested benefits of its employees. Finally, Lady Baltimore argued that the Pension Fund had delayed too long in asserting its claims, and thus should be denied interim withdrawal liability payments on the basis of laches.

of 29 U.S.C. § 1461(h)(1). The court reasoned that this was because this statute, if constitutional, would preclude not only withdrawal liability in general, but interim withdrawal liability as well. Earlier in its opinion, the district court determined, over the Pension Fund's objection, that Lady Baltimore had withdrawn from the Pension Fund by January 12, 1985.[5] The district court then found that 29 U.S.C. § 1461(h)(1) violated the Pension Fund's right to substantive and procedural due process, and therefore was unconstitutional. It also ordered the continuation of interim withdrawal liability payments, and ordered Lady Baltimore to pay past due payments for February, 1984 through July, 1986 plus interest.

Lady Baltimore appeals the district court's denial of its motion for summary judgment, and its grant of the Pension Fund's motion for summary judgment.

## II. Discussion

### A. *Mechanics of MPPAA*

Because this court has discussed the structure and function of MPPAA elsewhere, only a brief discussion of its mechanics is necessary here. *See, e.g., Peick v. Pension Benefit Guaranty Corp.*, 724 F.2d 1247, 1251–56 (7th Cir.1983), *cert. denied*, 467 U.S. 1259, 104 S.Ct. 3554, 82 L.Ed.2d 855 (1984). MPPAA was enacted by Congress to cure the problems arising when an employer ceased making payments to a pension plan fund. When an employer ceased making such payments, the plan would be left with vested pension obligations which were only partially funded. MPPAA provides that an employer who withdraws from a pension plan covered under it becomes liable for an amount of money designed to cover the employees' share of vested, but unfunded, benefits. 29 U.S.C. §§ 1381(a), 1382; *Robbins v. Admiral Merchants Motor Freight, Inc.*, 846 F.2d 1054, 1055–56 (7th Cir.1988) *and cases*

*cited therein; Robbins v. B & B Lines*, 830 F.2d 648, 649 (7th Cir.1987).

Under MPPAA, after the sponsor of a multiemployer plan determines that an employer has "withdrawn" within the meaning of 29 U.S.C. §§ 1383, 1385, the sponsor must issue a notice and demand for payment of the employer's withdrawal liability. The notice must include a schedule of payments. 29 U.S.C. § 1399(b)(1). Within 90 days after receiving the notice and demand, the employer may ask the plan's sponsor "to review any specific matter relating to the determination of the employer's liability and the schedule of payments," 29 U.S.C. § 1399(b)(2)(A)(i). After a "reasonable review of any matter raised," the sponsor must notify the employer of its decision. 29 U.S.C. § 1399(b)(2)(B).

If the employer disagrees with the plan's sponsor's decision on review, it must initiate arbitration within 60 days after the earlier of the date it is notified of the decision or 120 days after its request for review. 29 U.S.C. § 1401(a)(1). Courts interpreting § 1401(a)(1) have been consistent and unequivocal in concluding that this provision mandates that any dispute over withdrawal liability must be arbitrated. *Robbins v. Admiral Merchants*, 846 F.2d at 1056 (citations omitted). During the pendency of any review or appeal thereof, withdrawal liability payments are due beginning no later than 60 days after the demand. 29 U.S.C. § 1399(c)(2). These payments are referred to as "interim withdrawal liability payments." If these payments are not made, the employer may be subject to a civil action in federal court to compel payment. 29 U.S.C. §§ 1451(b), (c).

This procedure was followed in this case. The only reason that this matter is currently in federal court is because of the Pension Fund's suit to compel Lady Baltimore to make interim withdrawal liability payments.

---

5. The Pension Fund maintained in the district court, and still maintains on appeal, that Lady Baltimore did not actually withdraw from it until January 16. This is because January 12, 1982, fell in the middle of the week (Tuesday), and Article 18, § 2 of the collective bargaining agreement provided in part that the company was to make contributions for the entire week in which a given employee worked. Thus, Lady Baltimore's obligation to contribute to the Pension Fund did not cease until January 16 (Saturday of that week). The Pension Fund also maintains that this issue still requires arbitration.

## B. Reaching the Constitutional Question

The dispositive issue in this appeal is whether it was proper for the district court (and, in addition, whether it is proper for us) to reach the question of the constitutionality of 29 U.S.C. § 1461(h)(1). This appeal is in an unusual position. Lady Baltimore, which argued that it was proper for the district court to reach the constitutional question at that level, continues to maintain this argument on appeal. The Pension Fund, which argued in the district court that it was improper for the district court to consider the constitutional question until disputed issues of fact had been arbitrated, now argues on appeal that it is proper for this court, in the interest of judicial economy, to reach the constitutional question presented by this case. We agree with neither position. Rather, we agree with the *amicus curiae,* Pension Benefit Guaranty Corporation ("PBGC"), that it was improper for the district court to reach the constitutional question in this case. Not only then do we conclude that it is improper for us to reach this question here, but we vacate the decision of the district court on this question, and remand this matter to where it belongs: the arbitration table.

### 1. The General Rule

■ It is well established that federal courts must not rule on constitutional issues where other, nonconstitutional dispositive grounds are available. *Jean v. Nelson,* 472 U.S. 846, 854–55, 105 S.Ct. 2992, 2996–97, 86 L.Ed.2d 664 (1985); *United States v. Security Industrial Bank,* 459 U.S. 70, 78, 103 S.Ct. 407, 412–13, 74 L.Ed. 2d 235 (1982); *Hagans v. Lavine,* 415 U.S. 528, 546–47 & n. 12, 94 S.Ct. 1372, 1383–84 & n. 12, 39 L.Ed.2d 577 (1974); *Ashwander v. Tennessee Valley Authority,* 297 U.S.

288, 346–47, 56 S.Ct. 466, 482–83, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). In *Transport Motor Express, Inc. v. Central States, Southeast and Southwest Areas Pension Fund,* 724 F.2d 575 (7th Cir.1983), this court reaffirmed this principle in the MPPAA context. We held that the district court should not have reached the question of the constitutionality of MPPAA (before it was amended by the Tax Reform Act of 1986) without first making an explicit determination of a potentially dispositive nonconstitutional issue—the question whether the plaintiff in that case had in fact withdrawn from the fund.

Courts in other circuits, it is true, have addressed "facial challenges" to the constitutionality of withdrawal liability provisions. *See, e.g., Republic Industries, Inc. v. Teamsters Joint Council No. 83 of Virginia Pension Fund,* 718 F.2d 628, 635 (4th Cir.1983), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984); *Shelter Framing Corp. v. Pension Benefit Guaranty Corp.,* 705 F.2d 1502, 1509 (9th Cir.1983), *rev'd on other grounds sub nom. Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984); *Republic Industries, Inc. v. Central Pennsylvania Teamsters Pension Fund,* 693 F.2d 290, 298 (3d Cir.1982). They only have done so, however, where "[a]rbitration would neither develop a better record for adjudication of the constitutional issues nor eliminate the need to consider the constitutional challenge." *Shelter Framing Corp.,* 705 F.2d at 1509; *see also Republic Industries v. Teamsters Joint Council,* 718 F.2d at 635; *Republic Industries v. Central Pennsylvania Teamsters,* 693 F.2d at 295; [6] *cf. Peick,* 724 F.2d at 1261–62 (case on MPPAA's constitutionality ripe for adjudication where suit was against PBGC itself

---

**6.** As this court also noted in *Transport Motor Express,* moreover, other circuits have viewed this issue as an exhaustion of administrative remedies issue. That is, they have seen it as a choice between sending the case to arbitration and allowing a direct constitutional challenge. In *Transport Motor Express,* this court said:

> We think the problem is more precisely viewed as involving the propriety of reaching

constitutional issues when potentially dispositive nonconstitutional questions are presented. The Supreme Court has expressed a strong preference for avoidance of constitutional questions in such situations and we do not see how the forum in which the nonconstitutional issues would be resolved is relevant to that preference.

724 F.2d at 578 n. 3 (citations omitted).

and there was no pending or prematurely terminated liability proceeding which would raise substantial nonconstitutional issues required to be resolved before deciding constitutional question). Neither of these preconditions holds true here.

We also disagree with the position of the district court and with various other arguments advanced by the Pension Fund and Lady Baltimore that it was necessary to reach the constitutional question in this case. In its opinion, the district court wrote:

> [Section] 1461(h)(1) would void "any withdrawal liability incurred by the employer pursuant to Part I of Title E...." Part I of Subtitle E includes 29 U.S.C. § 1401(a), which provides for the arbitration of withdrawal liability disputes. § 1461(h)(1) would thus void any finding of liability by the arbitrator *per se.* Therefore, the question of § 1461(h)(1)'s validity is a legal threshold to arbitration. The court is presently concerned only with *interim* withdrawal liability. But if § 1461(h)(1) would nullify all withdrawal liability, even that found ultimately by an arbitrator, it would block interim liability as well. Therefore, the court must decide the provision's validity.

678 F.Supp. at 1328.

First of all, we agree with the *amicus curiae* that although § 1461(h)(1) voids withdrawal liability incurred by applicable employers, it does not purport to invalidate the entire statutory scheme for determining, challenging and resolving the existence and amount of such liability. As we will discuss below, moreover, MPPAA requires *interim* withdrawal liability payments to be made regardless of the nature of an employer's challenge to the underlying withdrawal liability. In other words, interim withdrawal liability payments must be made even if it is ultimately determined, for whatever reason, that the employer has no withdrawal liability.

We also reject the argument of the Pension Fund that, although the district court originally should not have reached this question, we should reach this question for reasons of judicial economy. As the Pen-

sion Fund acknowledges, the issue of Lady Baltimore's withdrawal date from the Pension Fund is subject to arbitration. Thus, the applicability of the statute to Lady Baltimore is in dispute. If it is decided, for instance (and we express no opinion as to what the decision should be), that Lady Baltimore's withdrawal date from the Pension Fund was January 16, 1982, the so-called Lady Baltimore Amendment would not apply to it. Thus, the district court would not have had to decide the constitutional issue at all. A decision made in the event that it becomes applicable is "pretty close to an advisory opinion in the literal sense." *Peick,* 724 F.2d at 1278 (Eschbach, J., dissenting) (quoting *People of the State of Illinois ex rel. Barra v. Archer Daniels Midland,* 704 F.2d 935, 941 (7th Cir.1983)).

Second, there is no "judicial economy" served here by allowing the district court's decision to stand. The district court's decision, as the Pension Fund and *amicus curiae* point out, did not eliminate the need for further arbitration. Lady Baltimore's date of withdrawal from the fund and its equitable defenses still have to be arbitrated. Moreover, these decisions still will be subject to further judicial review. *Compare Peick,* 724 F.2d at 1262 (where substantial hardship would result if court were to defer an opinion, court's decision was only means of clarifying significant financial uncertainties, and hundreds of cases on similar issues were pending around the country, judicial economy would be enhanced by a ruling from this court).

Finally, Lady Baltimore argues that arbitration will not be necessary because "if § 1461(h)(1) is constitutional, there is nothing to arbitrate." This, however, begs the questions whether first, we can reach the issue of the statute's constitutionality, and second, whether the statute is applicable to it in the first place. The first of these questions, we answer in the negative; the second, we hope, will be resolved by arbitration.

### 2. This Case

In this case, a factual dispute the resolution of which would moot the constitutional

issue remains open. This is the issue of Lady Baltimore's withdrawal date from the Pension Fund. As discussed above, the Pension Fund argues that Lady Baltimore could not have withdrawn from the Pension Fund until January 16, 1982. Lady Baltimore, on the other hand, argues that it withdrew on or before January 12, 1982. If it is found that Lady Baltimore withdrew from the Pension Fund *after* January 12, 1982, 29 U.S.C. § 1461(h)(1) would not, by its terms, apply to it. Thus, there would be no need to determine this statute's constitutionality. If, moreover, Lady Baltimore was found to have withdrawn from the fund on January 12, 1982, this would raise the question whether the statute, the language of which requires that a covered employer must have withdrawn "before January 12, 1982," applies to it.[7]

We do not believe (and none of the parties, save Lady Baltimore, believes) that this question already has been adjudicated in this case. It is true that the district judge noted in his opinion: "no genuine issue of material fact exists as to when Lady Baltimore withdrew: by January 12, 1982," 678 F.Supp. at 1325 n. 1. We do not think that this amounts to an "adjudication" of this issue. For one thing, the district court did not determine whether Lady Baltimore withdrew on January 12 or before January 12. Determination of this fact is necessary to deciding whether Lady Baltimore was covered by § 1461(h)(1).

Even if this dicta did amount to an adjudication of this issue, the question of an employer's withdrawal date from a pension fund is one which is subject to mandatory arbitration under 29 U.S.C. § 1401(a)(1). *Robbins v. Admiral Merchants*, 846 F.2d at 1056–57. Thus, we remand this case with directions that this dispute be, along with Lady Baltimore's equitable defenses, subject to arbitration. Because we determined in *Robbins v. Admiral Merchants* that an employer's withdrawal date is a matter required to be arbitrated under MPPAA, it is not necessary, as it was in *Transport Motor Express*, for the district

court to decide whether this matter should be adjudicated or arbitrated, 724 F.2d at 579.

### C. *Interim Withdrawal Liability Payments*

As noted above, Lady Baltimore also seeks relief from the district court's order to it to make interim withdrawal liability payments. We agree with the Pension Fund and the PBGC that this court need not reach the constitutional question in order to decide the issue of whether these payments are owing. We also conclude that Lady Baltimore must make these payments.

It is clear that Congress envisioned a " 'pay now, dispute later' collection procedure" for withdrawal liability. *Robbins v. Pepsi–Cola Metropolitan Bottling Co.*, 800 F.2d 641, 642 (7th Cir.1986) (per curiam); 29 U.S.C. §§ 1399(c)(2), 1401(d). In *Robbins v. McNicholas Transportation Co.*, 819 F.2d 682, 685 (7th Cir.1987), this court opined that "a district court has a measure of discretion whether or not to use injunctive power to compel interim payments in these situations." We conclude that the district court did not abuse its discretion in ordering interim payments of withdrawal liability in this case. In *McNicholas*, we concluded that:

> [W]here the trustees [of a pension fund] bring an action to compel payment, pending arbitration, the court should consider the probability of the employer's success in defeating liability before the arbitrator and the impact of the demanded interim payments on the employer and his business.

819 F.2d at 685.

As the district court recognized, Lady Baltimore asserted no particular economic hardship from making interim payments. In *McNicholas*, we observed that "compelled payment of money, recoverable with interest upon later determination of error, is not, in itself, irreparable harm." *Id.* It is true that the district court did not make an explicit assessment of the merits of

---

**7.** Lady Baltimore argues that, if this statute is not interpreted to apply to it, Congress will have enacted a nullity. We express no opinion on

this argument, for we need not address it at this time.

Lady Baltimore's case, reasoning that refusal to compel interim withdrawal liability payments in every instance where the employer presents a possibly meritorious defense to liability would frustrate the general intent of Congress that withdrawal liability be paid first and disputed later. We express no opinion on this view, for we think that the purpose of the court's holding in *McNicholas,* to avoid unfair and injurious results not intended by Congress, has been achieved, 819 F.2d at 685–86. Lady Baltimore does not argue on appeal that it will sustain any unintended, irreparable injury by making these payments. Its only contention is that, in accordance with a determination of 29 U.S.C. § 1461(h)(1)'s constitutionality, these payments should be returned to it. As discussed above, it is not proper to reach this question at this time.

### III. Conclusion

We REVERSE the district court's grant of summary judgment against Lady Baltimore on the issue of 29 U.S.C. § 1461(h)(1)'s constitutionality, and VACATE the district court's finding with respect thereto. We further REMAND this matter for arbitration, and AFFIRM the district court's award of interim withdrawal liability payments to the Pension Fund.