The SHERWIN–WILLIAMS
COMPANY, Plaintiff,

v.

CENTRAL STATES, SOUTHEAST AND
SOUTHWEST AREAS PENSION
FUND, Defendant.

No. 91 C 5443.

United States District Court,
N.D. Illinois, E.D.

Feb. 14, 1992.

Philip R. King, Mitchell Alan Orpett, Tribler & Orpett, Chicago, Ill., for plaintiff.

Terence George Craig, James Patrick Condon, Central States Law Dept., Rosemont, Ill., for defendant.

## MEMORANDUM OPINION

GRADY, District Judge.

This action, attacking § 104(2) of the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381–1461, on procedural due process grounds, comes before the court on plaintiff's motion for summary judgment and defendant's cross motion to dismiss, or in the alternative, to stay proceedings pending arbitration. Plaintiff's motion for summary judgment is denied and defendant's motion to dismiss is granted.

### THE FACTS

The facts of this case are largely undisputed.[1] Plaintiff, The Sherwin–Williams Company ("Sherwin–Williams"), is an Ohio corporation with its principal place of business in Cleveland, Ohio. Defendant, Central States, Southeast and Southwest Areas Pension Fund (the "Fund"), is a retirement plan with its principal offices in Peoria, Illinois. In January of 1987, Sherwin–Williams acquired 100 percent of the shares of Lyons Group, Inc., a holding company that owned Lyons Transportation Lines, Inc. ("Lyons"), a less-than-truckload motor carrier. Plaintiff's Statement of Material Undisputed Facts ("Statement") at ¶ 1. At the time of Sherwin–Williams' acquisition of control of Lyons Transporta-

---

1. On September 19, 1991, plaintiff filed a statement of undisputed material facts supported by the affidavit of Dennis Tocci, in-house counsel for plaintiff. *See* Plaintiff's Memorandum in Support of Motion For Summary Judgment, Exhibit A. Defendant filed its response to plaintiff's statement on October 16, 1991. Therein defendant substantially agreed with plaintiff's statement, stating only that it had insufficient knowledge and/or information to form a belief as to certain factual assertions made by plaintiff. For reasons set out below, these asserted facts to which defendant did not expressly agree are not important to the disposition of these cross motions.

tion Group, Inc., Lyons was a participant in and contributor to the Fund. *Id.* Sherwin–Williams sold all of its Lyons shares on or about May 31, 1990, to J.R.C. Acquisition Corporation ("J.R.C."). Plaintiff claims that at the time of the above sale, the existing officers and directors of Lyons resigned, and J.R.C. assumed full and complete control of Lyons, substituting its own directors and officers to run the company. *See* Statement at ¶ 2.

The parties agree that after Sherwin–Williams sold its interest in Lyons in May of 1990, J.R.C. became jointly liable with Lyons for the latter's contribution obligation to the Fund. In October of 1990, Lyons and J.R.C. filed bankruptcy proceedings and Lyons ceased making required payments to the Fund.

Because of Lyons' cessation of contributions, in January of 1991, the Fund, pursuant to 29 U.S.C. § 1382, assessed withdrawal liability against Sherwin–Williams under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1368, as amended by MPPAA, 29 U.S.C. §§ 1381–1461 (1980). The Fund's trustees are required by § 1382 [2] of MPPAA to determine the existence, and calculate the amount, of an employer's liability upon the employer's withdrawal from such multiemployer pension plans. The Fund trustees apparently concluded that Sherwin–Williams was liable for withdrawal liability on the theory that Sherwin–Williams and Lyons were members of a controlled group, as defined by the Act, at the time of Lyon's cessation of payments to the Fund. *See* Statement at ¶ 4.

After the Fund trustees notified plaintiff of the amount of withdrawal liability they

assessed, plaintiff, pursuant to 29 U.S.C. § 1399(b)(2)(A)(i),[3] requested that the trustees review and retract their position regarding the assessment of withdrawal liability. *See* Statement at ¶ 5. Plaintiff asserted that, in view of 29 U.S.C. § 1398,[4] it was not a member of a controlled group with Lyons at the time the latter stopped contributing to the Fund. *See* Plaintiff's Complaint for Declaratory Relief ("Complaint") at ¶ 16. Alternatively, plaintiff argued that, even if it had been part of the controlled group, it had not completely withdrawn from the Fund and therefore could not be held liable for complete withdrawal. *Id.*

After waiting six months for a response to its request and receiving none (Complaint at ¶ 17), plaintiff initiated arbitration proceedings before the American Arbitration Association as required by 29 U.S.C. § 1401(a). On the same day, plaintiff filed this declaratory judgment action claiming that § 104(2) of MPPAA is facially unconstitutional insofar as it denies plaintiff its right to an unbiased decisionmaker in contravention of the Due Process Clause of the Fifth Amendment to the United States Constitution. Plaintiff asks that the court reach this constitutional issue now (before the arbitration proceeding runs its course), declare § 1401(a)(3)(A) to be violative of procedural due process guarantees, and issue a permanent injunction prohibiting the use of § 1401(a)(3)(A) in the pending statutorily-mandated arbitration proceeding between the parties. Plaintiff has moved for summary judgment, and the Fund has moved to dismiss the plaintiff's complaint

---

**2.** Section 1382 reads, in part, as follows:
When an employer withdraws from a multiemployer plan, the plan sponsor, in accordance with this part, shall—
(1) Determine the amount of the employer's withdrawal liability,....
29 U.S.C. § 1382(1) (1980).

**3.** Section 1399(b)(2)(A)(i) states:
(2)(A) No later than 90 days after the employer receives the notice described in paragraph (1), the employer—
(i) may ask the plan sponsor to review any specific matter relating to the determination

of the employer's liability and the schedule of payments,....

**4.** Section 1398 provides for exemption from withdrawal liability for certain types of changes in business form or for the suspension of contributions during labor disputes. It is unclear from reading the provision what subsection plaintiff argued was applicable to its sale of Lyons' shares. This uncertainty, however, is not material for purposes of ruling on the present motions before the court.

or, alternatively, to stay proceedings pending the completion of the arbitration.

## DISCUSSION

### 29 U.S.C. § 1401(a)(3)(A)

Section 1401(a)(3)(A) is a provision in the dispute resolution subpart of MPPAA which accords a rebuttable presumption of correctness to the initial determinations of Fund trustees in the statutorily required arbitration proceedings. Section 1401(a)(3)(A) reads as follows:

> (3)(A) For purposes of any proceeding under this section, any determination made by a plan sponsor under sections 1381 through 1399 of this title ... is presumed to be correct unless the party contesting the determination shows by a preponderance of the evidence that the determination was unreasonable or clearly erroneous.

29 U.S.C. § 1401(a)(3)(A). As noted above, after receiving notice from the Fund that it had been assessed withdrawal liability, Sherwin–Williams asked the Fund trustees to reevaluate their initial determination in light of 29 U.S.C. § 1398, which plaintiff believes exempts it from liability for withdrawal. Whatever the response of the trustees was,[5] it is clear enough that they did not agree with plaintiff's position. The trustees' determination—express or implied—that § 1398 does not afford Sherwin–Williams an exemption to MPPAA's imposition of withdrawal liability has the benefit of the presumption embodied in § 1401(a)(3)(A) in the pending arbitration proceedings.

Plaintiff argues that because the trustees owe strict fiduciary duties exclusively to the Fund, including the obligation to discharge their Fund duties "solely in the interest of the participants and beneficiaries" of the Fund, 29 U.S.C. § 1104, they are predisposed to impose excessive liability on withdrawing employers. Plaintiff further argues that this bias in favor of imposing liability on withdrawing employers is exacerbated by the statutory presumption to be accorded the trustees' determination in the arbitration proceeding.

Plaintiff asserts that this procedural device embodied in § 1401(a)(3)(A), in conjunction with the alleged institutional bias of the Fund trustees, deprives it of its due process right to present its statutory defenses to a fair and impartial tribunal.

The Supreme Court has not decided the constitutionality of § 1401(a)(3)(A), and there is currently a split in authority among the Circuit Courts which have considered the issue. The First, Second, Fourth, Ninth, and District of Columbia Circuits have all upheld the arbitral presumption as squaring with due process requirements. *See, e.g., Keith Fulton & Sons, Inc. v. New England Teamsters and Trucking Industry Pension Fund,* 762 F.2d 1137 (1st Cir.1985); *Textile Workers Pension Fund v. Standard Dye & Finishing Co.,* 725 F.2d 843, 854–55 (2d Cir.), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3554, 82 L.Ed.2d 856 (1984); *Washington Star Co. v. Int'l Typographical Union Negotiated Pension Plan,* 729 F.2d 1502, 1511 (D.C.Cir.1984); *Board of Trustees of the Western Conference of Teamsters Pension Trust Fund v. Thompson Building Materials, Inc.,* 749 F.2d 1396, 1403–04 (9th Cir.1984), *cert. denied,* 471 U.S. 1054, 105 S.Ct. 2116, 85 L.Ed.2d 481 (1985); *Republic Industries, Inc. v. Teamsters Joint Council No. 83,* 718 F.2d 628, 639–42 (4th Cir. 1983), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984).

The Third Circuit, however, has held that the inherent bias of the trustees, coupled with the statutorily-mandated presumption of § 1401(a)(3)(A), deprives the employer of its Fifth Amendment right to a fair and impartial tribunal. *See United Retail & Wholesale Employees v. Yahn and McDonnell, Inc.,* 787 F.2d 128 (3d Cir. 1986), *aff'd per curiam by equally divided vote sub. nom.,* 481 U.S. 735, 107 S.Ct. 2171, 95 L.Ed.2d 692 (1987). And one district court in this circuit, citing and following the reasoning set forth in *Yahn and McDonnell,* has held § 1401(a)(3)(A) to be unconstitutional. *See Robbins v. Pepsi-*

---

5. As noted above, Sherwin–Williams asserts that the Fund has never "responded in any meaningful way" to this request for review. Complaint at ¶ 17.

*Cola Metropolitan Bottling Co.*, 636 F.Supp. 641 (N.D.Ill.1986) (Nordberg, J.).

The court agrees with the Fund's position that this case should be dismissed and that plaintiff should exhaust its administrative remedies before the merits of plaintiff's constitutional claim are addressed.

*Dismissal*

The Fund argues that this constitutional challenge is premature, since plaintiff has not arbitrated its withdrawal liability as required by MPPAA. Although most circuits have treated this as an exhaustion of remedies problem,[6] the Seventh Circuit has expressly disagreed and has treated it as a matter of judicial restraint. *See, e.g., Robbins v. Lady Baltimore, Foods, Inc.*, 868 F.2d 258 (7th 1989); *Transport Motor Exp., Inc. v. Central States, Southeast and Southwest Areas Pension Fund*, 724 F.2d 575 (7th Cir.1983); *cf. Peick v. Pension Ben. Guar. Corp.*, 724 F.2d 1247 (7th 1983), *cert. denied*, 467 U.S. 1259, 104 S.Ct. 3554, 82 L.Ed.2d 855 (1984).

In *Transport*, the Seventh Circuit, stated that "[t]he great gravity and delicacy of constitutional decision-making counsels that federal courts abjure constitutional rulings where a 'dispositive nonconstitutional ground is available.'" 724 F.2d at 577 (*citing Ruslan Shipping Corp. v. Coscol Petroleum Corp.*, 635 F.2d 648, 650 (7th Cir.1980) (quoting *Hagans v. Lavine*, 415 U.S. 528, 547, 94 S.Ct. 1372, 1384, 39 L.Ed.2d 577 (1974))). *Transport*, like the instant case, was a challenge to a pension fund's assessment of withdrawal liability under provisions of MPPAA. The plaintiffs argued that, as applied retroactively to them, the withdrawal liability provisions of the MPPAA violated the due process and takings clauses of the Fifth Amendment and that the withdrawal liability dispute resolution procedures established by the MPPAA violated certain other constitutional provisions. They also argued that they had not "withdrawn" from the Fund within the meaning of the MPPAA. The fund contended that the court should not reach the merits of plaintiffs' constitutional claims because MPPAA mandated that plaintiffs first arbitrate any dispute regarding the assessment of withdrawal liability. The district court held that arbitration was not required because the plaintiffs were making a "facial challenge," and requiring them to arbitrate "would not promote deference to either Congress or the autonomy of the arbitration process." *Id.* at 577 (quoting *Transport Motor Exp., Inc. v. Central States, Southeast and Southwest Areas Pension Fund*, No. 81 C 4535, slip op. at 10 (N.D.Ill. May 18, 1983)).

The Seventh Circuit reversed the district court, holding that the district court (as other courts) had erroneously treated the question as one of exhaustion of remedies:

> We think the problem is more precisely viewed as involving the propriety of reaching constitutional issues when potentially dispositive nonconstitutional questions are presented. The Supreme Court has expressed a strong preference for avoidance of constitutional questions in such situations and we do not see how the forum in which the nonconstitutional issues would be resolved is relevant to that preference.

*Id.* at 578 n. 3 (citations omitted). The court concluded that the nonconstitutional issue of whether "withdrawal"—within the

---

**6.** The United States Supreme Court has repeatedly held that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–464, 82 L.Ed. 638 (1938). An exception, however, lies for those plaintiffs bringing facial constitutional attacks on federal legislation such as MPPAA. *See, e.g., Republic Industries, Inc. v. Central Pennsylvania Teamsters Pension Fund*, 693 F.2d 290, 293–98 (3d Cir.1982) (exhaustion not a prerequisite to judicial review of challenge to facial constitutionality of withdrawal liability provisions of MPPAA); *Republic Industries, Inc. v. Teamsters Joint Council*, 718 F.2d 628, 635 (4th Cir.1983) (because plaintiff's attack is facial "arbitration could neither moot the constitutional issues which are raised nor develop a factual context for their easy judicial resolution, [and therefore] exhaustion of the remedy of arbitration will not be required...."). Under this authority, Sherwin–Williams would have a good argument for by-passing arbitration, because it alleges that § 1401(a)(3)(A) is facially unconstitutional. For reasons set forth below, however, these cases have no application to Sherwin–Williams.

meaning of the statute—had actually occurred had to be specifically addressed before the plaintiff's constitutional challenges were considered. *Id.* at 579. The court distinguished its ruling in *Peick* (issued the same day as *Transport,* and also presenting the issue of the propriety of addressing the constitutionality of the MPPAA before statutorily mandated arbitration was conducted[7]) on the ground that the employer-plaintiff in *Peick* had undisputedly withdrawn from the plan and had raised no statutory defenses to the trustee's assessment; whereas the defendant in *Transport* did raise statutory defenses. *Id.* at 577–78. The Seventh Circuit has recently reaffirmed its holding in *Transport*—again in the context of a constitutional challenge to MPPAA—in *Robbins v. Lady Baltimore Foods, Inc.,* 868 F.2d 258, 262 (7th Cir. 1989).

Plaintiff argues that these cases do not apply to its cause of action because in *Transport* and *Lady Baltimore* the plaintiffs challenged substantive provisions of MPPAA, whereas Sherwin–Williams is challenging "the *procedural mechanism provided* in MPPAA." Plaintiff's Memorandum In Opposition to Defendant's Motion To Dismiss ("Plaintiff's Opposition") at 9 (emphasis in original). This distinction is beside the point. The question is not the nature of plaintiff's challenge to the assessment. The question is whether that challenge, if successful, would moot the constitutional issue.

A recent case in this district supports this view. *See Santa Fe Southern Pacific Corp. v. Central States, Southeast and Southwest Areas Pension Fund,* No. 88 C 6999, Order, 1990 WL 358565 (N.D.Ill. July 17, 1990) (Alesia, J.). The plaintiffs in *Santa Fe* brought a declaratory action alleging that the same presumptions at issue here

violated their due process rights. Judge Alesia refused to reach plaintiff's constitutional argument and dismissed their action without prejudice, citing *Transport* and *Lady Baltimore* as dispositive of the issue.

Plaintiff argues that even if the arbitrator decides in its favor, "any appeal by the Fund to this Court will necessarily entail the issue of whether the arbitrator was correct in sustaining Sherwin–Williams' challenge to the trustee's decision in light of the presumption." Plaintiff's Opposition at 7–8. Thus (the argument goes) even if it wins in arbitration, plaintiff will be forced to challenge the constitutionality of § 1401(a)(3)(A) before this court.

This argument overlooks the possibility that plaintiff could win the arbitration by overcoming the presumption and sustain its position on appeal notwithstanding the presumption. Indeed, that possibility is the premise of our conclusion that the case is potentially resolvable on nonconstitutional grounds. Surely there is no basis at this juncture for holding that plaintiff will be unable to show "by a preponderance of the evidence that the determination was unreasonable or clearly erroneous." 29 U.S.C. § 1401(a)(3)(A).

CONCLUSION

Plaintiff's motion for summary judgment is denied. Defendant's motion to dismiss is granted. The complaint will be dismissed without prejudice to plaintiff's right to file another complaint in this court should it not prevail in the arbitration proceeding.

---

7. In *Peick v. Pension Ben. Guar. Corp.,* 724 F.2d 1247 (7th Cir.1983), the court, treating defendant's argument as essentially a ripeness challenge, held that regardless of whether the case is treated as an "as applied" or "facial" attack on MPPAA,

> we think that sufficient facts are presented to allow us to consider the core issue of the constitutionality of the withdrawal provisions of the MPPAA, at least as that issue affects the

situation before us. This legal issue is one the resolution of which would be essentially unaffected by further factual development.

> Unlike most of the cases involving challenges to the MPPAA, there is no pending or prematurely terminated liability proceeding in this case, raising substantial non-constitutional issues which might be required to be resolved before reaching constitutional issues.

724 F.2d at 1261 (citation omitted).