In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2472

Central States, Southeast and
Southwest Areas Pension Fund,
and Howard McDougall, Trustee,

Plaintiffs-Appellees,

v.

Bomar National, Inc., an Indiana
corporation, Hi-Way Dispatch, Inc.,
an Indiana corporation, and B&M
Properties, Inc., an Indiana corporation,

Defendants-Appellants.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 CV-0346--John F. Grady, Judge.

Argued January 11, 2001--Decided June 15, 2001

Before Flaum, Chief Judge, and Cudahy and
Posner, Circuit Judges.

Cudahy, Circuit Judge. This is another
effort by Central States, Southeast and
Southwest Areas Pension Fund to collect
interim withdrawal liability payments,
this time from Bomar National, Inc., an
Indiana corporation. This action was
brought in the Northern District of
Illinois, pursuant to the Employee
Retirement Income Security Act of 1974
(ERISA), as amended by the Multi-Employer
Pension Plan Amendments Act of 1980
(MPPAA), 29 U.S.C. sec. 1001 et seq. The
district court granted summary judgment
for the plaintiff Central States, and we
now affirm.

I.

Central States, not a stranger to
litigation, is a multi-employer pension
plan within the meaning of secs. 3(37)
and 4001(a)(3) of ERISA, 29 U.S.C.
secs. 1002(37) & 1301(a)(3).
Defendants Bomar National, Inc., Hi-Way
Dispatch, Inc. and B&M Properties, Inc.
are corporations organized and existing
under Indiana law, with their principal

places of business in Indiana. As of March 28, 1998, Bomar owned 100 percent of the stock of Hi-Way and B&M. Bomar, Hi-Way and B&M are therefore a single employer within the meaning of sec. 1301(b)(1) of ERISA; for the remainder of this opinion, they will be referred to collectively as "Hi-Way." Until its permanent cessation of operations, Hi-Way provided regulated, for-hire transportation services in interstate and intrastate commerce. Pursuant to several collective bargaining agreements to which it was a party, Hi-Way made pension contributions to Central States for its drivers and mechanics domiciled in Marion, Indiana. The most recent of these agreements expired on March 31, 1998. According to Hi-Way, it began to meet with union representatives to negotiate a successor agreement as the expiration date approached./1 During the negotiations, Hi-Way advised the union representatives that the license plates of its trucks would expire on March 31, and that because of the cost Hi-Way would not be able to purchase new license plates until a new labor agreement had been negotiated. Without the new license plates, Hi-Way would be forced to cease operations. Hi-Way thus informed its drivers that if no agreement was reached before March 31, 1998, there could be a "short shut down of operations" until the vehicles were re-plated. No agreement materialized. The drivers were instructed by Hi-Way to return their equipment to the Marion domicile by March 27. After mid-April, when a scheduled negotiations session was canceled, there were no further communications between Hi-Way and the union representatives until November. At that time, a meeting was scheduled for December 8, and after the meeting Hi-Way ceased all operations permanently.

Central States determined that Hi-Way, on or about March 28, 1998, had ceased permanently to have an obligation to contribute to the pension fund, thus effecting a "complete withdrawal" within the meaning of section 4203 of ERISA, 29 U.S.C. sec. 1383. It based this determination on information from a union representative that Hi-Way was no longer in business and that its bargaining unit employees were no longer employed. When an employer withdraws from a multi-employer plan, it incurs withdrawal liability under the MPPAA. See 29 U.S.C.

secs. 1381, 1391. To collect what is due, a pension fund must "determine the amount of withdrawal liability owed by a withdrawing employer, 29 U.S.C. secs. 1382, 1391, and send the employer a notice and demand for payment of that amount, 29 U.S.C. sec. 1399(b)(1)." Central States, Southeast and Southwest Areas Pension Fund v. Ditello, 974 F.2d 887, 888 (7th Cir. 1992). Thus, Central States issued a notice of withdrawal liability and demand for payment, which Hi-Way received on about June 15, 1998. Hi-Way claims that this action was premature, because it had not withdrawn as of June 1998. Rather, it had temporarily ceased operations on March 28 due to the labor dispute, but did not effect a complete withdrawal until December 8, 1998, when it agreed to a permanent cessation of operations during its final meeting with union representatives.

Central States filed a complaint in the district court in January 1999, alleging that Hi-Way incurred withdrawal liability as of March 29, 1998. Claiming that Hi-Way owed it delinquent interim withdrawal liability payments, Central States sought past due amounts, interest, attorneys' fees, costs and liquidated damages, as well as an order directing Hi-Way to make all future interim withdrawal liability payments. In response, Hi-Way claimed that Central States had notified it of its withdrawal liability prematurely, and therefore was not entitled to receive interim payments.

The district court concluded that, even when an employer disputes the fact that it had withdrawn at the time the pension fund claims, it is still liable for interim withdrawal liability payments. The merits of the dispute regarding withdrawal liability, including the date of its incurrence, must be referred to arbitration. See 29 U.S.C. sec. 1401(a)(1). But, the court concluded, even when such an arbitration has not yet occurred, the employer remains liable to make interim payments. Of course, if the arbitrator finds that there is no withdrawal liability, interim payments may be refunded. The court here ordered Hi-Way to make all past due interim withdrawal liability payments, all future payments according to the schedule determined by Central States, costs,

attorneys' fees and liquidated damages. Hi-Way appeals.

II.

A.

The MPPAA imposes withdrawal liability on an employer withdrawing from a multiemployer pension plan. See 29 U.S.C. secs. 1381, 1391. Congress wanted "to ensure that [withdrawing] employer[s] would not leave a plan with vested pension obligations that were only partially funded." Central States, Southeast and Southwest Areas Pension Fund v. Bell Transit Co., 22 F.3d 706, 707 (7th Cir. 1994) (citing Robbins v. Lady Baltimore Foods, Inc., 868 F.2d 258, 261 (7th Cir. 1989)). Thus, employers who withdraw from pension plans must still pay their proportionate share of the "unfunded vested benefits." 29 U.S.C. sec. 1381(a), (b)(1). This withdrawal liability "ensures that 'the financial burden of [the] employees' vested pension benefits will not be shifted to the other employers in the plan and, ultimately, to the Pension Benefit Guaranty Corporation, which insures such benefits.'" Bell Transit, 22 F.3d at 707 (quoting Central States, Southeast and Southwest Areas Pension Fund v. Slotky, 956 F.2d 1369, 1371 (7th Cir. 1992)). In order to collect withdrawal liability, a pension fund must "determine the amount of withdrawal liability owed by a withdrawing employer, 29 U.S.C. secs. 1382, 1391, and send the employer a notice and demand for payment of that amount, 29 U.S.C. sec. 1399(b)(1)." Central States, Southeast and Southwest Areas Pension Fund v. Ditello, 974 F.2d 887, 888 (7th Cir. 1992). Employers who disagree with the assessment of withdrawal liability may first ask the plan to review its assessment, and then may initiate arbitration. See 29 U.S.C. secs. 1399(b)(2), 1401(a)(1). However, the initiation of arbitration proceedings "does not suspend the employer's obligation to pay in accordance with the schedule of payments assessed by the plan." Bell Transit, 22 F.2d at 707 (citing Jaspan v. Certified Industries, Inc., 645 F.Supp. 998, 1004 (E.D.N.Y. 1985)). Rather, the MPPAA establishes a "pay now, dispute later" scheme, under which an employer must make interim payments until liability is finally

determined. See Central States, Southeast and Southwest Areas Pension Fund v. Nitehawk Express, Inc., 223 F.3d 483, 495-96 (7th Cir. 2000). Specifically, the MPPAA provides that "[w]ithdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor . . . notwithstanding any request for review or appeal of determinations of the amount of such liability or schedule." 29 U.S.C. sec. 1399(c)(2). This provision serves the dual purpose of reducing the risk that an employer will not pay and of encouraging speedy adjudication by requiring immediate arbitration before the courts become involved in the merits of the dispute. See Trustees of Chicago Truck Drivers v. Central Transport, Inc., 935 F.2d 114, 118-19 (7th Cir. 1991).

Hi-Way first challenges the claimed timing of its withdrawal and asserts that Central States may only assess liability after Hi-Way's withdrawal from the pension fund. Hi-Way argues that congressional intent and the statutory language establish an intent that no funds be collected from the employer until withdrawal has taken place. Hi-Way points to 29 U.S.C. sec. 1381(a), which provides that "[i]f an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability." Hi-Way attempts to draw further support from sec. 1382, which provides that the plan sponsor shall determine the amount of, issue notice of, and collect withdrawal liability "[w]hen an employer withdraws from a multiemployer plan." It is, of course, true that withdrawal liability does not arise until a withdrawal has occurred, but whether and when there has been a withdrawal is part of the merits, which, under the MPPAA, must be resolved in arbitration. Hi-Way contends that the language of the act makes it clear that there must be actual and uncontested withdrawal from a plan before an employer can issue any notice of withdrawal liability--including interim liability. This is incorrect. Such a policy would be directly at odds with the mandate of the MPPAA that, until the merits of a dispute about withdrawal are decided, an employer is liable for interim payments (subject, of course, to refund if he prevails).

Hi-Way's next argument is unavailing for similar reasons. Hi-Way contends that, because it was involved in a labor dispute during the relevant time period, it had not yet withdrawn and was therefore not liable for withdrawal payments. The MPPAA does delineate certain exceptions to the definition of "complete withdrawal." For example, sec. 1398(2) of the act provides that an employer shall not be considered to have withdrawn "solely because . . . an employer suspends contributions under the plan during a labor dispute involving its employees." But whether Hi-Way's situation fits within this exception is not for this court to decide: "Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title" must be resolved through arbitration. 29 U.S.C. sec. 1401(a)(1). The question before us is not whether Hi-Way met the criteria for the labor dispute exception, thus entitling it to refuse to make withdrawal liability payments, but whether, when arbitration of such a matter is pending and unresolved, Hi-Way must make interim withdrawal liability payments. Arbitration has been sought, and--if the arbitrator finds that Hi-Way was involved in a labor dispute from March 18, 1998 to December 8, so that it fits within the sec. 1398(2) exception-- Hi-Way will be deemed not liable for withdrawal payments during that time period. But for now, Hi-Way must continue to pay in accordance with the schedule of payments provided by Central States. See Bell Transit Co., 22 F.3d at 707. Our holding in Bell Transit is clear--the MPPAA dictates a "pay now, dispute later" procedure in situations like the one before us. See id.; see also Central States, Southeast and Southwest Areas Pension Fund v. Lady Baltimore Foods, Inc., 960 F.2d 1339, 1341 (7th Cir. 1992) ("[T]he employer may not defer withdrawal liability payments pending arbitration. If he wins the arbitration he will get back whatever he has paid but the rule is pay first, arbitrate after.").

Hi-Way's next step is to argue that there are exceptions to the "pay now, dispute later" procedure under the MPPAA. One exception articulated by this court is that we may excuse interim payments

pending arbitration if the employer can show both that the pension fund lacks a colorable claim and that the employer will suffer severe financial hardship if compelled to make interim payments. See Trustees of the Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Rentar Indus., Inc., 951 F.2d 152, 155 (7th Cir. 1991); Central Transport, 935 F.2d at 119; Robbins v. McNicholas Transportation Co., 819 F.2d 682, 685 (7th Cir. 1987). Hi-Way wisely chooses not to argue that its case fits within this "frivolous claim" exception. But it unwisely contends that a second exception outlined in Central States, Southeast & Southwest Areas Pension Funds v. Hunt Truck Lines, Inc., 204 F.3d 736 (7th Cir. 2000), governs.

In Hunt Truck Lines, we affirmed a district court's determination that it could not order an employer to makeinterim payments with respect to its withdrawal liability. See 204 F.3d at 738-39, 742. There, unlike here, the parties agreed that the pension fund's assessment of withdrawal liability was premature. Both this court and the district court concluded that, because the parties agreed that the withdrawal liability assessment was premature, the court could decline to award the plaintiff interim payments. Hunt Truck Lines did not carve out a second exception to the MPPAA, but rather addressed a limited factual scenario in which an award of interim liability payments would be senseless: the parties agreed that the notice was premature. The parties in Hunt Truck Lines had agreed on a withdrawal date, and the withdrawal date was subsequent to the fund's issuance of notice and demand for payment. Thus, we were able to "avoid reading the MPPAA to allow funds to arbitrarily assess withdrawal liability without undercutting the statute's dispute resolution mechanism." Id. at 742. In other words, because it was obvious that the assessment of liability was premature, we were not undermining the MPPAA by refusing to award interim payments. We could not award payments that the fund was--without doubt--not entitled to collect.

Hi-Way would have us interpret Hunt Truck Lines as fashioning a new exception to the "pay now, dispute later" scheme of

the MPPAA. But the "new" exception, based on a "premature claim," would be exactly the same as the "frivolous claim" exception. The claim in Hunt Truck Lines was not just premature; it was also frivolous. This court was careful to note that "if the fund could not honestly plead that it assessed the employer's liability after withdrawal, it could not enforce an assessment that was not envisioned by the statute." Id. at 742. Thus, Hunt Truck Lines represents the very unique situation in which the pension fund has conceded that its assessment of liability is premature. The pension fund has not made such a concession here. Thus, even if we were to create a Hunt Truck Lines "premature claim" exception to complement the "frivolous claim" exception (which we decline to do), Hi-Way would not fitwithin it.

Hi-Way makes a feeble effort to conform with Hunt Truck Lines' narrow factual scenario by arguing that the pension fund admitted, through procedural errors, that Hi-Way had not withdrawn at the end of March 1998.

First, Hi-Way argues that Central States effectively admitted, in its response to Hi-Way's statement of material facts, that the withdrawal date was December 8, 1998. The background for this is that the local rules of the district court require that parties moving for summary judgment serve and file "a statement of material facts as to which the moving party contends there is no genuine issue and that the moving party is entitled to a judgment as a matter of law." Local Rule 56.1(a)(3). The opposing party must then file a response containing any disagreement, as well as a reference to evidence supporting that disagreement. Local Rule 56(b)(3)(A). Rule 56.1(b)(3)(B) provides that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." In response to paragraphs 23-28 and 30-41 of Hi-Way's statement of material facts, which are intended to support Hi-Way's argument regarding the timing of its withdrawal, Central States asserted that the facts recited were irrelevant and were unknown to Central States because discovery on those issues had not

commenced in the arbitration proceeding. These facts detailed the status of Hi-Way's labor negotiations, such as communications between Hi-Way and the union representatives; communications between Hi-Way and its drivers; Hi-Way's assessment of the progress of the negotiations; and the scheduling of meetings among the parties. Central States' failure to flatly deny the existence of these facts, Hi-Way argues, constitutes an admission that Central States' withdrawal liability assessment was premature.

This argument is unconvincing. Central States' reply does not constitute an admission. Local Rule 56.1(a)(3) of the Northern District of Illinois requires moving parties to file "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." The question at issue is not when Hi-Way withdrew, but rather whether there is a dispute as to when it withdrew. Central States' response asserting that the facts were irrelevant is sufficient because the local rule requires a moving party tosubmit material facts. In this motion for summary judgment while arbitration was pending, the only information material to the assessment of interim payments was whether the parties disagreed as to the withdrawal date. The facts asserted in paragraphs 23-41 of Hi-Way's filing go to the merits, which must be resolved by the arbitrator and not by the district court. Because the facts cited by Hi-Way were not material, Central States' failure to deny them, but instead to assert their irrelevance, was not an admission. To characterize Central States' response in this manner as an admission would be ludicrous. Hi-Way's argument is therefore without merit.

Hi-Way's second effort to create an agreement on the withdrawal date is premised on an argument that Central States' denial of paragraph 29 of Hi-Way's statement of material facts was legally insufficient, and therefore para graph 29 is admitted. Paragraph 29 reads:

The parties continued negotiations after March 28, 1998. Hi-Way did not permanently cease its operations and did not permanently cease to have an

obligation to contribute to the Pension Fund on March 28, 1998.

The denial contained in Central States' response, Hi-Way asserts, is supported only by a letter that constitutes inadmissible hearsay. The letter in question was sent by Central States to the local union confirming that Hi-Way had ceased operations as of March 29, 1998. It summarized the statements of a union representative to that effect. Hearsay, of course, is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). And Central States correctly points out that the issue here is not whether Hi-Way actually withdrew in March 1998, but whether Central States could "honestly plead" that it believed a withdrawal had occurred. See Hunt Truck Lines, 204 F.3d at 742. Thus, the letter and the statement within it are not offered for the truth of the matter asserted, but rather to demonstrate an honest disagreement on the face of the pleadings as to the actual date of Hi-Way's withdrawal. That is all that is required.

Finally, Hi-Way asserts that Central States' response to paragraph 19 of its statement of material facts constitutes an admission. Paragraph 19 states: "Until its permanent cessation of operations on December 8, 1998, Hi-Way provided regulated, for-hire transportation in interstate and intrastate commerce." In its response, Central States asserts that the facts in that paragraph are not relevant because they relate to the propriety of the withdrawal liability assessment--a matter for arbitration. It goes on to state: "Nevertheless, the Pension Fund agrees for the purposes of this motion [for summary judgment]." Hi-Way claims that this sentence constitutes a binding admission that Central States' liability assessment was premature. We do not agree. It has been clear throughout this litigation that Central States believes--with apparent good reason--that Hi-Way effected a complete withdrawal in March 1998. We decline to stretch the fund's words in this document to construe this as a binding admission that withdrawal did not occur until December. First, paragraph 19 says nothing about

withdrawal. Second, the words Hi-Way is seizing upon, "[u]ntil its permanent cessation of operations on December 8," were immaterial in the context of a summary judgment motion because it was inappropriate to determine a withdrawal date at that point in the judicial proceedings.

In Hunt Truck Lines, we noted that decisions regarding interim withdrawal liability payments potentially create a difficult policy dilemma:

If we find for [the pension fund] we would sanction a scenario whereby a [multiemployer pension plan] could declare that an employer had withdrawn because the Cubs lost, and if the employer refused to begin interim payments while it challenged the assessment, a court would be obliged to force it to pay liquidated damages and make interim liability payments that could not be recovered until the arbitration was complete. If we find for [the employer] it would mean that every time an employer withdraws from a fund, it could frustrate the purpose of the MPPAA's "pay now, dispute later" system by forcing a court to address the merits of the trustee's assessment of the withdrawal date before interim liability kicks in.

204 F.3d at 742. In Hunt Truck Lines, we did not have to address these policy implications because the answer was clear: the assessment of withdrawal liability was undisputedly premature, and therefore any fund claim to withdrawal liability would be frivolous. In other words, Central States could not "honestly plead" that it deserved payments. Here, Central States could honestly plead that it deserved payments. But still, the answer is perfectly clear; this court has considered the policy implications and addressed them by articulating the "frivolous claim" exception.

Because the propriety of Central States' assessment is in dispute, Hi-Way's argument is directly addressed by Central Transport, which allows courts to deny interim payments for frivolous claims. Without Central Transport's "frivolous claim" exception, unions could abuse the "pay now, dispute later" scheme of the MPPAA. They could do this by threatening

to force employers to cease all operations, automatically triggering interim withdrawal liability until an arbitrator determines that the scenario falls within the labor dispute exception. Allowing courts to deny frivolous claims to withdrawal liability works to prevent this. But in order to avoid having the frivolous claim exception gut the MPPAA "pay now, dispute later" scheme, this court has strictly limited the situation in which an employer could avoid interim liability: the employer must establish 1) that the pension fund's claim is frivolous and 2) that imposing interim liability would cause irreparable harm. See Rentar, 951 F.2d at 155 (citing Central Transport, 935 F.2d at 119). It is a difficult standard to meet, and it is meant to be that way.

Under Central Transport and Rentar, Hi-Way clearly loses. If Hi-Way established a concession by Central States that the withdrawal date was December 8 (and it most certainly did not), that would demonstrate that Central States has no colorable claim to the withdrawal liability payments. However, Hi-Way would still fail to meet the second prong of the "frivolous claim" exception. Hi-Way would still have to show that it would suffer severe financial hardship if compelled to make interim payments, and it has not even attempted to do this. See Rentar, 951 F.2d at 154-55.

B.

In its May 8, 2000 judgment order, the district court awarded Central States "post-judgment interest on the entire judgment balance and on the future payments to be made at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by Chase Manhattan Bank (New York, New York) for the fifteenth (15th) day of the month for which interest is charged and shall be compounded annually as set forth in the Central States Pension Plan and Trust Agreement." Hi-Way contends that this award was in error because 28 U.S.C. sec. 1961, not the pension trust agreement, should govern the calculation of post-judgment interest. Section 1961 provides that "interest shall be calculated . . . at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the

Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment."

Hi-Way maintains that Central States has not shown that Hi-Way agreed to the rate of interest provided for in the pension trust agreement. It argues that, because Hi-Way was not a party to the trust agreement that contains the provision specifying the interest rate, it is not bound by it. This is incorrect. Hi-Way was a party to the collective bargaining agreement, the terms of which bound it to pay pension contributions on behalf of its covered employees. The labor agreement clearly states that Hi-Way agrees to ratify all actions taken by the trustees of the fund, and the pension fund's trust agreement provides the interest rate. Thus, article 61 of the collective bargaining agreement provides in part:

By the execution of the Agreement, the Employer authorizes the appropriate Employers' Associations to enter into appropriate trust agreements necessary for the administration of such Fund, and to designate the Employer Trustees under such agreement, hereby waiving all notice thereof and ratifying all actions already taken or to be taken by such Trustees within the scope of their authority.

Hi-Way argues that employers are not automatically bound to the terms of a trust agreement by virtue of their participation in a fund. Absent an agreement, this might be true, but in this case there was an agreement. Hi-Way cites Jaspan v. Glover Bottled Gas Corp., in which the Second Circuit found that the employer had not agreed to be bound by the trust agreement. 80 F.3d 38 (2d Cir. 1996). As Central States points out, the court noted there that "had the parties intended to bind [the employer] to [the trust agreement's] terms, they could easily have done so by having [the employer] sign the Agreement or by referencing it in the collective bargaining agreements." Id. at 40. Here, of course, the trust agreement was specifically referenced. Thus, we find that Hi-Way is bound by the terms of the trust agreement. It is well established that parties can agree to an interest

rate other than the standard one contained in 28 U.S.C. sec. 1961. See Hymel v. UNC, Inc., 994 F.2d 260, 265 (5th Cir. 1993) (quoting In re Lift Equipment Service, Inc., 816 F.2d 1013, 1018 (5th Cir. 1987)); see also Ocasek v. Manville Corp. Asbestos Disease Compensation Fund, 956 F.2d 152, 154 (7th Cir. 1992) (holding that bankruptcy plan of reorganization, rather than sec. 1961, controlled the setting of the interest rate). We find that Hi-Way has made such an agreement.

III.

For the foregoing reasons, the judgment of the district court is

Affirmed.

FOOTNOTE

/1 The facts of the "labor dispute" are recounted from Hi-Way's allegations in the district court. Central States argued that the facts were not relevant, and that it had no knowledge of them because discovery had not yet commenced in the pending arbitration proceeding.